BK S 145 PG 236

STATE OF SOUTH CAROLINA    )
    )    AMENDED MASTER DEED
COUNTY OF CHARLESTON    )    BK S136 PG 809

## OTRANTO CLUB VILLAS HORIZONTAL PROPERTY REGIME III

This amended Master Deed is made, published and declared by Spoleto Construction and Supply, Inc., (hereinafter referred to as "Grantor"), with its principal office and place of business in Charleston County, South Carolina, this 6th day of MAY , 1985.

### ARTICLE I

### SUBMISSION AND CREATION

SECTION 1. GENERAL. The purpose of this amended Master Deed is to establish, pursuant to the Horizontal Property Act of the State of South Carolina, a three-phased horizontal property regime to be known as OTRANTO CLUB VILLAS HORIZONTAL PROPERTY REGIME III, hereinafter referred to as "Regime". The land and improvements to be submitted to the provisions of the Horizontal Property Regime Act and to the terms Declarant, by filing of record this amended Master Deed publishes and declares that the Condominium Property shall be owned, occupied, used, conveyed, encumbered, leased, and improved in accordance with the provisions of the Horizontal Property Act of the State of South Carolina and in accordance with the covenants, restrictions, encumbrances and obligations set forth in this Master Deed, all of which shall be deemed to be covenants and obligations running with the land.

SECTION 2. PHASED DEVELOPMENT. Declarant intends a condominium regime. The maximum number of units in each of the three phases are twenty (20) living units in Phase I, twenty-one (21) living units in Phase II and nineteen (19) living units in Phase III, for a total of sixty (60) units, all indentified and described herein. Construction has been completed on Phases I, II and III. Phase I consists of ten buildings being numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10, and Phase II, consists of twenty-one living units, being located in building number 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20. Phase II contains a swimming pool and recreation area. Construction of Phase III, consisting of an additional nineteen (19) units, being located in building numbers 21, 22, 23, 24, 25, 26, 27, 28, and 29, has begun and is expected to be completed by June 15, 1985.

### ARTICLE II

### THE CONDOMINIUM PROPERTY

SECTION 1. PROPERTY. The term "Property" means and includes the land described in Exhibit "C", Legal Land Descrip-

BK S 145 PG 237

tion and all improvements and structures now existing on the land and all easements, rights, and appurtenances belonging thereto.

SECTION 2.    THE LAND.    The land being submitted is described in Exhibit "C" annexed hereto.    No additional lands shall be annexed to the Regime by the Declarant in conjunction with this phased development.    Access to the Land is by Spoleto Lane which connects to NAD Road.

SECTION 3.    BUILDING ON THE LAND.    There are five (5) one-story frame buildings and five (5) two-story frame buildings on the land in Phase I.  There are ten (10) two-story frame buildings on the land in Phase II, and eight (8) one-story and one (1) two-story frame buildings on the land in Phase III, or a total of twenty-nine (29) frame buildings that have been completed in Phases I, II and III.

Phase I building numbers 1, 2, 3, 7, and 10 each contain two (2) three-bedroom apartments.  Building numbers 4, 5, 6, 8 and 9 each contain two (2) bedroom apartments.

Phase II building numbers 11, 12, 16, and 17 each contain two (2) three-bedroom apartments.  Building numbers 13, 14, 15, 18, and 19 each contain two (2) two-bedroom apartments. Building number 20 contains three (3) two-bedroom apartments. All bedroom are on the second level.  Phase III building 29 is two-stories and contains three (3) two-bedroom apartments.  All bedrooms are on the second level.

Buildings 21, 22, 23, 24, 25, 26, 27, and 28 are one (1) story and each contain two (2) two-bedroom apartments.

As indicated on exhibit "A", the buildings are numbered as 1 through 29, building numbers 2 and 3 being at the end of Spoleto Lane.

All Phase I, Phase II and Phase III buildings are, within reasonable construction tolerances, identical, being in general, wood frame construction with concrete or masonry foundation.

The Declarant does hereby, by duly executing this Amended Master Deed, submit the Land referred to herein, more particularly described in Exhibit "C" together with its buildings and improvements erected thereon, and all easements, rights and appurtenances belonging thereto (hereinafter referred to as the "Property"), to Horizontal Property Act of South Carolina, and does hereby create with respect to the Property Act of South Carolina, and does hereby create with respect ot the Property a Horizontal Property Regime in three phases that shall be known as OTRANTO CLUB VILLAS HORIZONTAL PROPERTY REGIME III to be governed by and subject to the provisions of this Master Deed and the provisions of the Horizontal Property Regime of South Carolina.

PAGE TWO

BK S 145 PG 238

**SECTION 4.**  **UNITS.**  Upon completion of Phase I, Phase II and Phase III, there are sixty (60) units contained in the Buildings, all of which are to be used for residential purposes.  The Units are all capable of individual utilization on account of having their own exits to the Common Elements of the Property, and they will be sold to one or more Owners; each Owner, obtaining a particular and exclusive property right thereto and also an individual interest in the General and Limited Common Elements of the Property, as hereinafter listed and necessary for their adequate use and enjoyment.

Unit designated A on Exhibit "A-2" are two (2) story three bedroom units.  The first floor contains a living-dining area, kitchen, utility room off the kitchen, lavatory, closet, stairway and garage, with the entrance to the right of the fireplace and left of the garage area.  The second floor contains three bedrooms, with closet, and two bathrooms.

Unit designated B on Exhibit "A-2" are two (2) story three bedroom units.  The first floor contains a living room, dining room, kitchen, utility room off the kitchen, lavatory, closet, fireplace, stairway and garage, with the entrance between the living room and stairwell. The second floor contains three bedrooms with closets, and two bathrooms.

Units designated C & D on Exhibit "A-1" are one (1) story two bedroom units are basically identical except the entrance to C units are on the left side of the building containing C units and the entrance to D units are on the right side of the building containing D units.

Units designated E on Exhibit "A-3" are two (2) story two bedroom apartments with the bedrooms on the second level.  Units designated F on Exhibit "A-3" are two (2) story three-bedroom apartments with the bedrooms on the second level.  Units designated G on Exhibit "A-4" are two bedroom apartments with bedrooms on the second level.

Units designated H on Exhibit "A-5" are two (2) story two-bedroom apartments with the bedrooms on the second level, with a garage attached thereto.

The Condominium Units and all other improvements constructed on the Condominium Property are set forth in detail in Exhibit "A" attached as amended hereto and made a part hereof.  Each Condominium Unit is described in said Exhibit "A", as amended, in such manner that there can be determined therefrom the identification, location, dimensions and size of each Unit, as well as the Common Elements and Limited Common Elements (i.e., screened porches, patios, decks, balconies, courtyards, etc.) appurtenant thereto.

**PAGE THREE**

BK S 145 PG 239

# ARTICLE III

## DEFINITIONS

SECTION 1.  The following words and phrases shall have the meanings herein ascribed to them:

(a)  **APARTMENT**  A part of the building, including one or more rooms or designated spaces located on one or more floors or a part or parts thereof, intended for any type of independent use, and with a direct exit to a public street or highway or to the Common Elements leading to such street or highway, together with the Appurtenant Interest appertaining to such Apartment.  Each Apartment is shown on the plot plans referred to in Articles I and II herein, and is identified on Exhibit "A", as amended, attached hereto. Excluding from an Apartment, however, are all spaces and improvements lying beneath the undercoated and/or unfinished inner surfaces of the perimeter walls, the unfinished upper surfaces of the registers and concrete slabs, and the unfinished inner surfaces of the trim, thresholds and doors along perimeter walls and floors, and the outer surface of window glass and glass sliding doors leading to balconies; and above the undecorated and/or unfinished lower surfaces and improvements lying beneath the undecorated and/or unfinished inner surfaces of all interior bearing walls and bearing partitions, and partition walls between separate Apartments; and further excluding all chutes, pipes, fluc, ducts, wires, conduits and other facilities running through any interior wall or partition for the purpose of furnishing utility or similar services to other Apartments or Common Elements.  Each Apartment shall include the spaces (and the improvements within such spaces) containing space heating, heat pumps and air conditioning apparatus and all electrical switches, wiring, pipes, ducts, conduits, and television, telephone, and electrical receptacles and boxes serving that Apartment exclusively, the surfaces of the foregoing being the boundaries of such Apartment, whether or not such spaces are contiguous.

(a)  **APPURTENANT INTEREST.**  (1)  the undivided interest in the Common Elements appurtenant to a Apartment; (2) the interest of its designee on behalf of all Co-Owners, or the proceeds of the sale or lease thereof, if any; and (3)  the interest of a Co-Owner in any other right, right of membership, claim, cause of action or asset of the Condominium or the Council of Co-Owners.

(c)  **BOARD OF DIRECTORS.**  The Board of Directors of the Council of Co-Owners consists of natural persons elected by the Co-Owners to direct the operation of the Condominium.

**PAGE FOUR**

BK S 1 4 5 ?G 2 4 0

(d) **BUILDINGS.** The thirteen (13) one-story and sixteen (16) two-story structures containing apartments as shown on Exhibit "A", as amended, attached hereto.

(e) **COMMON CHARGES.** The charges assessed against Apartments for their share of Common Expenses, as provided by the By-Laws.

(f) **COMMON ELEMENTS** All real property, fixtures and equipment within the Condominium other than the Apartments which shall be deemed General Common Elements, unless otherwise specifically designated in this Master Deed as Limited Common Elements. General Common Elements shall also include (1) easements through Apartments for conduits, ducts, plumbing, chimneys, wiring and other facilities for the furnishing of utility services to Apartments and the General Common Elements; provided, however, such easements through an Apartment shall be only according to the plans and specifications for the Building, or as the Building is constructed, unless approved in writing by the Apartment owner; and (2) an easement of support in every portion of an Apartment which contributes to the support of the Building; and (3) easements through the Apartments and General Common Elements for Maintenance, repair and replacement of the Apartments and General Common Elements.

(g) **COMMON EXPENSES AND RESERVES** (1) Expenses of administration and maintenance, repair or replacement of the Common Elements; (2) expenses declared to be Common Expenses by the Condominium Instruments or by the Condominium Act; (3) expenses agreed upon as Common Expenses by the Council of Co-Owners; and (4) reasonable reserves provided for in the Condominium Documents or agreed upon by the Council of Co-Owners, whether held in trust or by the Council of Co-Owners, including, but not limited to repair, replacement or addition to the Common Elements or any other real or personal property acquired or held by the Council of Co-Owners.

(h) **COMMON PROFITS.** The balance of all income, rent, profits, and revenues from Common Charges remaining after the deduction of Common Expenses.

(i) **CONDOMINIUM.** The real property and any incidents thereto and interest therein constituting a Horizontal Property Regime and submitted to the Condominium Act by the recordation of Condominium Instruments pursuant to the provisions of the Condominium Act.

(j) **CONDOMINIUM** Section 27-31-16, South Carolina Code of Laws, 1976, as Amended, and as the same may from time to time be amended and which amendments apply to this Condominium.

**PAGE FIVE**

BK S 145 PG 241

(k) <u>CONDOMINIUM INSTRUMENTS.</u>  This Master Deed, the By-Laws, and Plot Plans, recorded and filed pursuant to the provisions of the Condominium Act.  Any exhibit, schedule or certification accompanying a Condominium Instrument and recorded or filed simultaneously therewith shall be deemed an integral part of that Condominium Instrument.  To the extent permitted by law, any amendment or certification of any Condominium Instrument shall, from the time of the recordation or filing of such amendment or certification, be deemed an integral part of the affected Condominium Instrument, whether or not such amendment or certification was made in accordance with the provisions of the Condominium Act.

(l) <u>CO-OWNERS.</u>  The person or persons owning an Apartment and the attendant undivided interest in Common Elements specified and established in this Master Deed, and the Heirs, Executors, Administrators, Successors and Assigns of such person or persons.

(m) <u>COUNCIL OF CO-OWNERS.</u>  OTRANTO CLUB VILLAS REGIME III COUNCIL OF CO-OWNERS INC., a Corporation organized under the Laws of the State of South Carolina.  It is the Council of Co-Owners of co-owners acting as a group in accordance with the Condominium Instruments.

(n) <u>DECLARANT AND SUCCESSOR DECLARANT.</u>  SPOLETO CONSTRUCTION & SUPPLY INC., or any Successor Declarant, which is defined to mean any assignee or transferee of Declarant, whether voluntary or involuntary.

(o) <u>IMPROVEMENTS.</u>  Any construction on or in any land included in the Condominium.

(p) <u>LIMITED COMMON ELEMENTS.</u>  Those Common Elements designated in this Master Deed as reserved for the use of a certain Apartment or Apartments to the exclusion of other Apartments.

(q) <u>MAJORITY OR MAJORITY OF CO-OWNERS OR MORTAGEES.</u>  The Owners of more than fifty-one (51%) percent of the voting power in the Council of Co-Owners which shall be equal to the percentage interest in the Common Elements shown on Exhibit "B", Percentage of Common Elements, attached hereto and made a part hereof.  Any specified percentage, portion or fraction of Co-Owners, or of mortgagees, unless otherwise stated in the Condominium Instruments, means such percentage, portion or fraction in the aggregate of such voting power.

(r) <u>MANAGER.</u>  A person, firm or corporation employed or engaged to perform management services for the Condominium and the Council of Co-Owners.

PAGE SIX

BK S 145 PG 242

    (s)  **MASTER DEED.**  This document and all Exhibits attached hereto.

    (t)  **NOTICE AND COMMENT.**  The right of a Co-Owner to receive notice of action proposed to be taken by or on behalf of the Council of Co-Owners, and the right to comment thereon.  These provisions are set forth in Article XII of the By-Laws.

    (u)  **NOTICE AND HEARING.**  The right of a Co-Owner to receive notice of action proposed to be taken by or on behalf of the Council of Co-Owners, and the right to be heard thereon.  These provisions are set forth in Article XII of the By-Laws.

    (v)  **PERSON.**  An individual, corporation, partnership, Council of Co-Owners, trustee or other entity capable of holding an interest in real property or any combination thereof.

    (w)  **PROPERTY.**  The real estate described on the attached Exhibit "C", all buildings, all improvements and structures thereon, and all easements, rights and appurtenances belonging thereto, which have been or are intended to be submitted to the provisions of the Condominium Act by this Master Deed.

    (x)  **REGULATIONS.**  Regulations for the use of Apartments and Common Elements and for the conduct of Persons within the Condominium, made and promulgated by the Board of Directors pursuant to the By-Laws.

    (y)  **TRUSTEE.**  The entity, if any, designated by the Board of Directors as the Trustee for the receipt, administration and disbursement of funds derived from insured losses, condemnation awards, special assessments for uninsured losses, and other like sources.

    (z)  **VOTES OR VOTING POWER.**  See "Majority" hereinabove.

### ARTICLE IV

### NAME OF CONDOMINIUM

    **SECTION 1.**  The name of the Condominium is OTRANTO CLUB VILLAS HORIZONTAL PROPERTY REGIME III.

**PAGE SEVEN**

BK S 145 PG 243

## ARTICLE V

### DESCRIPTION OF LAND

SECTION 1. The land on which the Buildings and Improvements are located is described on Exhibit "C" attached hereto and made a part hereof.

## ARTICLE XI

### DESCRIPTION OF BUILDINGS

SECTION 1. See Exhibits "A" attached hereto.

## ARTICLE VII

### DESCRIPTION OF APARTMENTS

SECTION 1. A general description of each Apartment, including its Apartment designation, location, area and other data necessary for its proper identification .. set forth on "A" Exhibits attached hereto. A graphic description of each Apartment is shown on Exhibit "A" attached hereto.

## ARTICLE VIII

### DESCRIPTION OF COMMON ELEMENTS

SECTION 1. COMMON ELEMENTS. The Common Elements include all Property other than the Apartments, including, without limitation, the following if present, to wit:

(a) the land upon which the buildings, excluding the Condominium Units, are situated; the paved parking areas; the walkways, trees and shrubs; the building areas under roof, except individual Units.

(b) the foundation under and the roofs covering the buildings, including shingles, felt, sheathing and flashing; the exterior siding, fascia and sheathing, load-bearing interior walls and partitions around and between Units.

(c) all improvements exclusive of the Condominium Units and Limited Common Elements erected or which may be erected in the future upon the Land described in Exhibit "C".

(d) any protion of a utility system servicing more than one Unit (e.g. pipes, wires, conduits, ducts) is part of the Common Elements.

PAGE EIGHT

BK S 145 PG 244

(e)  all other elements of the property rationally of common use or necessary to the existence, upkeep and safety of the property and all other portions or parts of the Property not designated as being included in a Unit.

SECTION 2.    LIMITED COMMON ELEMENTS.    The following are Limited Common Elements:

(a)    certain Common Elements assigned to less than all of the Apartments shown on the plot plans referred to in Articles I and II herein and as identified on Exhibit "A" attached hereto.

(b)  except as otherwise designated on such plans, any chute, elevator, pipe, flue, duct, wire, conduit, bearing, wall, beam, column or any other fixture lying partially within and partially outside the designated boundaries of a Apartment, serving only a limited number of Apartments is a Limited Common Element allocated to that Apartment or to a limited number of Apartments.

(c)    the Courtyards, all porches, fences on the rear and side of all Units are Limited Common Elements as shown on the attached Exhibit "A" and are subject to such Rules and Regulations promulgated by the Board of Directors as hereinafter described in this Master Deed and the Association By-Laws.

(d)    such Unit shall have one (1) assigned parking space in close proximity to the Units' Building.

(e)    the Board of Directors in its discretion shall have the power to assign and designate additional Common Elements as Limited Common Elements.

(f)    any awnings, window boxes, doorsteps, stoops, entryways, porches, balconies, terraces, patios, all corridor doors. all doors between two Apartments and windows or other fixtures and hardware and trim associated with such fixtures, designed to serve a single Apartment are Limited Common Elements allocated to that Apartment.

## ARTICLE IX

### PERCENTAGES OF UNDIVIDED INTERESTS

SECTION 1.  The percentages of undivided interests in the Common Elements appertaining to each Apartment and its owner are set forth on Exhibit "B" attached hereto and made a part hereof.  These percentages are based on the value assigned to each Apartment at the date of this Master Deed in relation to the Value of all of the Apartments.  The total percentage of the undivided interests of all of the Apartments equals one hundred (100%) percent.

PAGE NINE

BK S 145 PG 245

A.    VALUE.    The value of each type of dwelling is $72,500.00 for three (3) bedroom units and $53,500.00 for two (2) bedroom units in all three Phases of said property.

The total value of each type in each Phase is set forth in Exhibit "B" attached hereto.

The value of the property is the sum of the Value of the dwellings consitituting said property.    The value of Phase I based upon foregoing dwelling values is $1,260,000. The value of Phase II based upon the foregoing dwelling values is $1,294,400.    The value of Phase III based upon the foregoing dwelling values is $1,016,500, for a total value of $3,571,000 for all three phases.

The values as are set forth herein are for the sole pupose of complying with the Act and do not necessarily reflect the market value of the dwellings or of the Property and shall in no way inhibit or restrict the fixing of a different circumstantial value or sale price to any of the dwellings in any type of act or contract.

B.    OWNERSHIP OF COMMON ELEMENTS.    Ownership of the Common Elements is apportioned among and appurcenant to the dwellings based upon the relation of the value of each dwellings based upon the relation of the value of each dwelling to the value of all or part of the Property.

At the time of recording of the Phase III Amended Deeds, a portion of the undivided present interest in the Phase I and II Common Elements appurtenant to  Phase I and II dwelling shall revert to Grantor; and such dwelling's undivided future interest in Phase I, II & III Common Elements shall become an undivided present interest.    From the time of recording of the Phase III deeds there shall be appurtenant to each dwelling in the Regime an undivided present interest in all Regime Common Elements, expressed herein immediately below in percentages based on the relation of the value of the dwelling to the value of all Property.    The Grantor has a percentage ownership interest in all Regime Common Elements equal to the total of the percentage interests appurtenant to the dwellings owned by it, and such total will be reduced from time to time on account of the sale of dwellings by Grantor.

At the time of recording of this amendment of the within Master Deed and amendment for Phase III, establishing Phase III, all undivided interest in Phases I, II and III shall merge and shall be the undivided interest as set forth in Exhibit "B" for all unit owners.

PAGE TEN

BK S 145 PG 246

## ARTICLE X

## COMMON EXPENSES

SECTION 1.    To the extent attributable to Common Elements and administration of the Condominium and the Council of Co-Owners, funds for the payment of current expenses, and for the creation of reserves for the payment of future expenses, including certain improvements, replacements and additions, and such other reserve requirements as may be accepted by the Council of Co-Owners, shall be Common Expenses and shall be obtained by assessments against the Co-Owners in proportion to their percentage interests in the Common Elements.

## ARTICLE XI

## COMMON PROFITS

SECTION 1.    Common Profits shall be:

(a)    distributed among the Co-Owners according to the percentages of the undivided interests in the Common Elements;

(b)    credited to their Common Charges according to the stated percentage; or

(c)    used for any other purpose as the Council of Co-Owners decides.

## ARTICLE XII

## COUNCIL OF CO-OWNERS, AGENT FOR SERVICE

SECTION 1.    The name of the Council of Co-Owners is OTRANTO CLUB VILLAS REGIME III COUNCIL OF CO-OWNERS INC. It is a corporation organized under the Laws of the state of South Carolina, operating on a non-profit basis.    The Condominium shall be administered, supervised and managed by the Council, having its principal office in North Charleston, South Carolina, which shall act by and on behalf of the Co-Owners of the Apartments in the Condominium in accordance with this instrument, the By-Laws of the Council, and in accordance with the Condominium Act, as Amended.    The Articles of Incorporation and By-Laws, attached hereto as Exhibits "E" and "D" respectively, form an integral part of the plan of ownership herein described, shall govern the conduct and affairs of the Co-Owners of the Condominium (who are the members of the Council) and shall be construed in conjunction with the provisions of this Master Deed.

BK S 145 PG 247

SECTION 2. Pursuant to the Act, the Council is hereby designated as the Form of Administration of the rights, powers, privileges and duties necessary or incidental to the proper administration of the Condominium, and By-Laws of the Council hereto attached. The Council shall also be empowered and is hereby empowered to excercise any of the rights, powers, privileges of which may be delegated to it by the Co-Owners.

SECTION 3. The Co-Owner of an Apartment shall automatically, upon becoming the Co-Owner of an Apartment, be a member of the Council, and shall remain a member of said Council until such time as his, her or its ownership ceases for any reason, at which time, his, her or its membership in said Council of Co-Owners shall automatically cease. Other than as an incident to a lawful transfer of the title to an Apartment, neither membership in the Council nor any share in the assets of the Council shall be transferable, and any attempted transfer shall be null and void.

SECTION 4. Notwithstanding the duty of the Council to maintain and repair parts of the Condominium, the Council shall not be liable to Co-Owners for injury or damage, other than the cost of maintenance and repair, caused by any latent condition of the Property to be maintained and repaired by the Council, or caused by the elements or other Co-Owners or Persons.

## ARTICLE XIII

## USE

SECTION 1. Each Apartment, as shown on Exhibit "A" and "C" shall be occupied and used by the respective Co-Owners as a residential dwelling for the Co-Owner, his family, servants, leasees, tenants and guests and for no other purposes. Subject to those conditions set forth in this Master Deed, including the By-Laws and Regulations thereunder, Apartments may be leased.

## ARTICLE XIV

## BY-LAWS

SECTION 1. The By-Laws of the Council of Co-Owners are set forth on Exhibit "D" attached hereto and made a part hereof.

PAGE TWELVE

BK S 145 PG 248

## ARTICLE XV

## AMENDMENTS

SECTION 1. This Master Deed shall be amended only by vote of two-thirds (2/3) of the Co-Owners, at any meeting of the Council of Co-Owners duly called for such purpose, following written notice to all Co-Owners, and to their mortgagees appearing on the records of the Council of Co-Owners, except that if such amendment directly or indirectly changes the boundaries of any Apartment, the undivided interest in the Common Elements appertaining thereto, the allocation of any Limited Common Element appertaining thereto, the liability for Common Expenses appertaining thereto, or rights to Common Profits appertaining thereto, such amendment shall require the affirmative vote of seventy-five (75%) percent of the Co-Owners and shall, in addition, require the consent of the mortgagees of at least seventy-five (75%) percent of the Apartments subject to mortgages and the consent of the owners of those Apartments directly affected. No amendment shall be effective until recorded in the Register of Mesne Conveyance Office for Charleston County, South Carolina. The Declarant does relinquish any and all special rights, expressed or implied, through which the Declarant may directly or indirectly control, direct, modify, or veto any action of the Council of Co-Owners and control the Council of Co-Owners shall pass to the Co-Owners of units within the condominium no later than 120 days after the date by which seventy-five (75%) percent of the units in Phase III have been conveyed to unit purchasers, however, this date shall be no later than five (5) years following the date of the first conveyance to a unit owner. The Declarant will foster early participation of unit owners in the management of the condominium. Notwithstanding the foregoing, no actions by the Declarant shall affect Declarant's rights, as a unit owner, to exercise the votes allocated to units which the Declarant owns.

## ARTICLE XVI

## RIGHTS OF ACTION

SECTION 1. The Council of Co-Owners and any aggrieved unit owner has a right of action against unit owners for failure to comply with the provisions of the declarations contained in the Master Deed, the By-Laws, or equivalent documents. Unit owners have similar rights of action against the Council of Co-Owners which are made pursuant to authority granted the Council in the documents in this section.

BK S 145 PG 249

## ARTICLE XVII

### POWER OF ATTORNEY TO BOARD OF DIRECTORS

**SECTION 1.** Each Co-Owner by the acceptance of a deed or by the exercise of any incident of ownership, grants to the persons who shall, from time to time, constitute the Board of Directors an irrevocable Power of Attorney, coupled with an interest, to acquire title to or lease any Apartment whose owner desires to surrender, sell or lease the same or which may be the subject of foreclosure of judicial sale, in the name of the Board of Directors or its designees, corporation or otherwise, on behalf of all Co-Owners; and to convey, sell, lease, mortgage or otherwise deal with any such Apartment so acquired, or to sub-lease any Apartment leased by the Board of Directors.

## ARTICLE XVIII

### PERSONS AND APARTMENTS SUBJECT TO CONDOMINIUM INSTRUMENTS

**SECTION 1.** All present and future Co-Owners, tenants, leasees, mortgagees and occupants of Apartments shall be subject to and shall comply with the provisions of the Condominium Instruments as they now exist and as they may be Amended from time to time. The acceptance of a deed or the exercise of any incident of ownership or the entering into of a lease or the entering into of occupancy of a Apartment shall constitute agreement that the provisions of such Condominium Instruments are accepted and ratified by such Co-Owner, tenant, mortgagee or occupant and all such provisions shall be deemed and taken to be covenants running with the land and shall bind any persons having at any time any interest or estate in such Apartment as though the provisions of this Section had been ~cited and stipulated at length in each and every deed conveyance or lease thereof.

**SECTION 2.** The Board of Directors may promulgate Regulations regarding the use and occupancy of Apartments and Common Elements, and the activities of occupants therein.

## ARTICLE XIX

### TERMINATION

**SECTION 1.** The Co-Owners may remove the Property from the provisions of the Condominium Act and of the Condominium Instruments, by an instrument to that effect, recorded and containing the signatures of one hundred (100%) percent of the Co-Owners, provided one hundred (100%) percent of the holders of all liens affecting any of the Apartments consent thereto or agree in either case by recorded instruments that their liens be transferred to an undivided interest in the Property.

BK S 145 PG 250

SECTION 2.  Upon the removal of the Property from
the provisions of the Condominium Act and the Condominium
Instruments, the Co-Owners shall be deemed to own the
Property as tenants in common, with undivided interest in
the same percentages as the undivided interests previously
owned by each in the Common Elements.

SECTION 3.  The removal provided for in this
Article and Section shall not bar the subsequent
resubmission of the Property to the provisions of the
Condominium Act.

## ARTICLE XX

## BOUNDARIES, ENCROACHMENTS AND EASEMENTS

SECTION 1.  The existing physical boundaries, as
defined in the Condominium Instruments, of any Apartment or
Common Element now existing or as reconstructed in
substantial conformity with the plot plans shall be
conclusively presumed to be its boundaries, regardless of
the shifting, settlement or lateral movement of any building
and regardless of minor variations between the physical
boundaries as described in this Master Deed or shown on the
condominium plan and the existing physical boundaries of any
such Apartment or Common Element.  This presumption applies
only to encroachments within the Condominium.

SECTION 2.  If any portion of any Common Element
encroaches on any Apartment or if any portion of a Apartment
encroaches on any Common Element, as a result of the duly
authorized repair of the building, a valid easement for the
encroachment and for the maintenance of the same shall exist
so long as the building stands.  The purpose of this Section
is to protect the Co-Owners, except in cases of willful and
intentional misconduct by them or their agents or employees,
and not to relieve the Declarant or any contractor,
sub-contractor, or material men of any liability which any
of them may have by reason of any failure to adhere
substantially to the plot plans.

SECTION 3.  If any part of the Condominium is
destroyed partially or totally as a result of fire or domain
proceedings, and then is reconstructed, encroachment of any
Apartment on any Common Element, due to such reconstruction,
shall be permitted and valid easements for such
encroachments and the maintenance of them shall exist so
long as the Building stands.

SECTION 4.  Each Co-Owner shall have an
appurtenant easement in common with all other Co-Owners to
use all columns, supporting and sheltering structural
members, and other like facilities located in any of the
other Apartments or in the Common Elements and serving his
Apartment.  Each Apartment and the Common Elements shall be
subject to an appurtenant easement in favor of other
Co-Owners to use the pipes, ducts, cables, wires, conduits,

PAGE FIFTEEN

BK S 1 45 PG 25 1

utility lines, sewer lines and other facilities serving other Apartments or the Common Elements and located in each such Apartment.   In addition, each Apartment shall be subject to and shall have such appurtenant easements of support and shelter from and over such other Apartments and the Common Elements as may be necessary for the quiet enjoyment of such Apartment.   The Board of Directors and their authorized agents shall have the right of reasonable access to each Apartment to inspect, make emergency repairs or replace the foregoing fixtures.

### ARTICLE XXI

### NO SEVERENCE OF OWNERSHIP

SECTION 1.   No Co-Owner shall execute any deed, mortgage or other instrument conveying or mortgaging title to his Apartment without including therein the Appurtent Interest, it being the intention to prevent any severance of such combined ownership.   Any such deed, mortgage or other instrument purporting to affect one or more such interests, without including all such interests, shall be deemed and taken to include the interest or interests so omitted, even though the latter shall not be expressly mentioned or described therein.   No part of the Appurtenant Interests of any Apartment may be sold, transferred or otherwise disposed of except as part of a sale, transfer or other disposition of the Apartment to which such interests are appurtenant.

### ARTICLE XXII

### DECLARANTS RIGHTS RESERVED

SECTION 1.   As long as the Declarant is a Co-Owner, the Declarant and its duly authorized agents, representatives and employees may maintain as model Apartments and/or sales offices an Apartment owned by the Declarant.   The Declarant reserves the right to remove all fixtures, equipment, furnishings, materials and supplies used in connection with such sales office and model Apartment.

SECTION 2.   The Declarant reserves the right to perform such work and repairs on the Property, other than Apartment which Declarant does not own; and the further right to control all such work and repairs, and the right of access thereto, until its completion.

SECTION 3.   The Declarant reserves the right to post signs and displays in the Common Elements to promote sales of Apartments, and to conduct general sales activities, in such manner as will not unreasonably disturb the rights of Co-Owners.

BK S 1 4 5 PG 2 5 2

SECTION 4. So long as the Declarant owns ten (10%) percent or more of the Apartments for sale in the ordinary course of business, no action may be taken by the Council of Co-Owners that would be determental to the sales of Apartments by the Declarant without written agreement thereto by the Declarant.

### ARTICLE XXIII

### CONDEMNATION

SECTION 1. If any part of the Condominium shall be taken or condemned by any authority having the power of eminent domain, such that no Apartment, nor Limited Common Element appurtenant thereto is taken, all compensation and damages for and account of the taking, exclusive of the compensation for consequential damages to certain affected apartments, shall be payable to the Council of Co-Owners or a Trustee, either as Trustee for all Co-Owners and Mortgagees according to the loss or damages to their respective interests. The Council of Co-Owners acting through the Board of Directors, shall have the right to act on behalf of the Co-Owners with respect to the negotiation and litigation of the issues with respect to the taking and compensation affecting the Common Elements, without limitation on the right of the Co-Owners to represent their own interests. Such proceeds shall be used in accordance with the provisions of the By-Laws. Nothing herein is to prevent Co-Owners whose Apartments are specifically affected by the taking or condemnation from joining in the condemnation proceedings and petitioning on their own behalf for consequential damages relating to loss of value of the affected Apartments, or personal improvements therein, exclusive of damages relating to Common Elements. In the event that the condemnation award does not allocate consequential damages to specific Co-Owners, but by its terms includes an award for reduction in value of Apartments without such allocation, the award shall be divided between the affected Co-Owner and the Council of Co-Owners or Trustee, as their interests may appear.

SECTION 2. If part or all of the Condominium shall be taken or condemned by any authority having the power of eminent domain, such that any Apartment or a part thereof (including Limited Common Elements assigned to any Apartment) is taken, the Council of Co-Owners shall have the right to act on behalf of the Co-Owners with respect to the Common Elements as in Section 1 hereinabove, and the proceeds shall be payable as outlined therein. The Co-Owners directly affected by such taking shall represent and negotiate for themselves with respect to the damages affecting their respective Apartments. The awards so made shall be distributed through the Council of Co-Owners or

PAGE SEVENTEEN

BK S 145 PG 253

Trustee first to the restoration of the Apartments and common buildings or facilities on the remaining land of the Condominium in the same manner as provided for restoration under the By-Laws to the extent possible, attempting to rebuild buildings containing new Apartments, of the same number, size and basic plan as the Apartments taken with any excess award distributed in accordance with the provisions of the By-Laws. In the event that the Board of Directors determines that such a taking so removes land and buildings containing Apartments that they cannot effectively be restored or replaced substantially in compliance with the building plans, and mortgages encumbering seventy-five (75%) percent of the undivided interests in the Common Elements subject to mortgagees vote to accept an alternative plan, then the Council of Co-Owners shall submit the issue to arbitration in accordance with the Rules of the American Arbitration Council of Co-Owners for remedies with respect to the continued existence or reform of the Condominium, the division of the award as to the taken and remaining Apartments, and such other remedies as may be required.

### ARTICLE XX1V

### INSURANCE

**SECTION 1.** The Council shall insure the Property against risks, without prejudice to each Co-Owner to insure that Owner's Apartment for that Owner's account and benefit. In case of fire or any other disaster, all insurance proceeds shall be used to reconstruct the Building, provided; however that the construction shall not be compulsary when it composes the whole or more than two-thirds (2/3) of the Property. In such case, and unless otherwise unanimously agreed upon by the Co-Owners, the insurance proceeds shall be delivered pro rata to the Co-Owners in accordance with the By-Laws or in accordance with the decision of seventy-five (75%) percent of the Co-Owners if there is no By-Law provision. In the event insurance proceeds are insufficient to cover the cost of reconstruction, the rebuilding costs shall be paid by all of the Co-Owners directly affected by the damage in proportion to the value of their respective Apartments. The Provisions of this Section may be changed only by unanimous resolution of the Owners concerned, adopted subsequent to the date on which the fire or other disaster occurred.

### ARTICLE XXV

### MORTGAGEES

**SECTION 1.** Notwithstanding anything contained in the Condominium Instruments to the contrary, any right of first refusal granted to the Council shall not impair the

**PAGE EIGHTEEN**

BK S 145 PG 254

rights of a first mortgagee to any Apartment to (1) foreclose or take title to an Apartment pursuant to the remedies provided in the Mortgage; or (2) accept a deed (or assignment) in lieu of foreclosure in the event of default by a mortgagor; or (3) sell or lease an Apartment acquired by the Mortgagee.

SECTION 2. Any first mortgagee obtaining title to an Apartment pursuant to the remedies provided in the mortgage or foreclosure of the mortgage will not be liable for such Apartments unpaid assessments or Common Charges which accrue prior to the acquisition of title to such Apartment by the Mortgagee.

SECTION 3. In addition to any other notices required to be given by the Council of Co-Owners to holders of first mortgage liens on Apartments, the following notices shall be provided to all such mortgagees to which the Council of Co-Owners has written notice:

(a) written notice at least thirty (30) days prior to the effective date of any amendment to the Master Deed or to the By-Laws;

(b) written notice of any default by any Owner whose Apartment is subject to a mortgage lien, given to such lien holder, of any obliation of such Owner provided for in the Master Deed or the By-Laws on which default is not cured within sixty (60) days after the same shall occur;

(c) written notice at least ninety (90) days prior to the effective day of any decision by the Council of Co-Owners to terminate the then current management contract and to assume self management of the affairs of the Council of Co-Owners. Any such action shall not become effective if objected to in writing by such Mortgagees of record receiving notice holding liens on Apartments whose value represents seventy-five (75%) percent of the aggregate of all Apartments then subject to first mortgages of record.

(d) written notice to mortgagees of record of substantial damage or destruction to the Building or Buildings from condemnation or casualty loss which effects a material portion of the property or any unit on which there is a mortgage lien.

(e) written notice of five (5) days after notice or knowledge of any lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Council of Co-Owners.

PAGE NINTEEN

BK S 145 PG 255

## ARTICLE XXVI

### MANAGEMENT AGREEMENT

SECTION 1.    The Association has entered into a Management Agreement, a copy of which is annexed hereto as Exhibit "F" and made a part hereof.  Each Unit Owner, his Heirs, Successors and Assigns, shall be bound by said Management Agreement for the purposes therein expressed, including but not limited to:

(a)    adopting, ratifying, confirming and consenting to the execution of said Management Agreement by the Association;

(b)  covenanting and promising to perform each and every one of the covenants, promises and undertakings to be performed by Unit Owners in the cases provided therefor in said Management Agreement;

(c)  ratifying, confirming and approving each and every provision of said Management Agreement, and acknowledging that all of the terms and provisions thereof are reasonable;

(d)  agreeing that the persons acting as Directors and Officers of the Association entering into such an Agreement have not breached any of their duties or obligations to the Association;

(e)  it is specifically recognized that some or all of the persons comprising the orginal Board of Directors of the Association, are or may be stockholders, officers and directors of the Management Firm, and that such circumstances shall not and cannot be construed or considered as a breach of their duties and obligations to the Association, nor as possible grounds to invalidate such Management Agreement in whole or in part;

(f)  the acts of the Board of Directors and Officers of the Association in entering into the Management Agreement be and the same are hereby ratified, approved, confirmed and adopted;

(g)  the Management Agreement provides that the Association has the right to terminate said Agreement without penalty upon ninety (90) days notice.

### ARTICLE XXVII

### MISCELLANEOUS

SECTION 1.   CAPTION.   The captions contained in the Condominium Instruments are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of the Condominium Instruments nor the intent of any provision thereof.

**PAGE TWENTY**

BK S 145 PG 256

**SECTION 2. GENDER.** The use of the masculine gender shall be deemed to refer to the feminine and neuter gender and the use of the singular shall be deemed to include the plural, and vice versa, whenever the content of the Condominium Instruments so requires.

**SECTION 3. WAIVER.** No provision contained in the Condominium Instruments shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

**SECTION 4. INVALIDITY.** The invalidity of any provision of the Condominium Instruments shall not be deemed to impair or affect in any manner the validity, enforceability or effect of the remainder, and in such event, all of the other provisions of the Condominium Instruments shall continue in full force and effect.

**SECTION 5. CONFLICT** The Condominium Instruments are intended to comply with the requirements of the Condominium Act and all other applicable laws. In the event of any conflict between the Condominium Instruments and the provisions of the statutes, the provisions of the statutes shall control. In the event of any conflict between this Master Deed and any other Condominium Instruments, this Master Deed shall control.

**SECTION 6. EXECUTION OF DOCUMENTS.** The President or Secretary of the Council of Co-Owners is responsible for preparing, executing, filing and recording amendments to the Condominium Instruments.

IN WITNESS WHEREOF, the undersigned Declarant has by its duly authorized officer set its Hand and Seal to the within Master Deed this ___6th___ day of ___May___, 1985.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

SPOLETO CONSTRUCTION &
SUPPLY INC.

ANDREW J. COMBS,
PRESIDENT

TMS#485-00-00-111

DECLARANT ADDRESS:   8735 NORTHPARK BOULEVARD
CHARLESTON, SOUTH CAROLINA 29405

**PAGE TWENTY-ONE**

BK S 145 PG 257

STATE OF SOUTH CAROLINA    )
                                )

COUNTY OF CHARLESTON       )

            PERSONALLY appeared before me, <u>Lori A. Titus</u>
who being duly sworn, deposes and says that (s)he saw the
within named SPOLETO CONSTRUCTION & SUPPLY INC. by
its PRESIDENT, Andrew J. Combs, sign, seal and as its act
and deed deliver the within Master Deed and that (s)he
with ~~Alton L. Ogier~~ witnessed the execution
thereof.

SWORN to before me this 6th

day of  May        1985.

NOTARY PUBLIC FOR SOUTH CAROLINA             Lori A. Titus
MY COMMISSION EXPIERS: 7/24/89


FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CHARLESTON does
hereby consent to the submission and creation of the within
described property to a Three Phased HORIZONTAL PROPERTY
REGIME.

EXHIBIT "A"
(AS AMENDED)

BK S 145 PG 258

BK S 145 PG 259



EXHIBIT A-1



ELEVATIONS

EXHIBIT A-2

BK S 145 PG 260

BK S 145 PG 261



REAR
SCALE 1/8"=1'-0"

SIDE
SCALE 1/8"=1'-0"

NOTE: THESE DRAWINGS TAKEN FROM
ARCHITECTURAL PLANS.

SIDE
SCALE 1/8"=1'-0"

ELEVATIONS

FRONT
SCALE 1/8"=1'-0"

"E"

"F"

E. K. SEABROOK, JR. INC.
TWO & THREE BEDROOM DUPLEX
OTRANTO CLUB VILLAS

EXHIBIT A-3

THESE DRAWINGS ARE THE PROPERTY OF THE ENGINEER AND MAY NOT BE USED WITHOUT WRITTEN CONSENT OF THE ENGINEER IN VIOLATIONS AND SUBJECT TO LEGAL ACTION.

ELEVATIONS

SIDE

FRONT
"G"

REAR

SIDE

NOTE - THESE DRAWINGS TAKEN FROM ARCHITECTURAL PLANS

EXHIBIT A-4

BK S 145 PG 262

EXHIBIT "B" AS AMENDED                    BK S 145 PG 263

## SCHEDULE OF BASIC VALUES
## OTRANTO CLUB BILLAS REGIME III

| PHASE I | BLDG. NO/TYPE | UNIT NUMBER | BASIC VALUE | UNDIVIDED PERCENTAGE OF INTEREST IN COMMON ELEMENTS PHASE I |
|---------|---------------|-------------|-------------|--------------------------------------|
| TWO-STORY THREE B/R | 1B | 2160 Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY THREE B/R | 1A | 2162 Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY THREE B/R | 2B | 2150 Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY THREE B/R | 2A | 2152 Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY THREE B/R | 3A | 2150 Spoleto Ln E | 72,500.00 | 2.0302436 |
| TWO-STORY THREE B/R | 3B | 2152 Spoleto Ln E | 72,500.00 | 2.0302436 |
| ONE-STORY TWO B/R | 4C | 2154 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY TWO B/R | 4D | 2156 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY TWO B/R | 5C | 2158 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY TWO B/R | 5D | 2160 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY TWO B/R | 6C | 2162 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY TWO B/R | 6D | 2164 Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY THREE B/R | 7A | 2166 Spoleto Ln E | 72,500.00 | 2.0302436 |
| TWO-STORY THREE B/R | 7B | 2168 Spoleto Ln E | 72,500.00 | 2.0302436 |
| ONE-STORY TWO B/R | 8C | 2170 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY TWO B/R | 8D | 2172 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY TWO B/R | 9D | 2174 Spoleto Ln E | 53,500.00 | 1.4981798 |

BK S 145 PG 264

| ONE-STORY TWO B/R | 9C | 2176 Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY THREE B/R | 10A | 2178 Spoleto Ln E | 72,500.00 | 2.0302436 |
| TWO-STORY THREE B/R | 10B | 2180 Spoleto Ln E | 72,500.00 | 2.0302436 |
| PHASE I TOTAL UNIT 20 | | | $1,260,000.00 | 100% |

| TWO-STORY | | | 2175 | | | |
| TWO B/R | 20G | | Spoleto Ln E | 53,500.00 | | 1.4981798 |
| | | | | | | |
| TWO-STORY | | | 2170 | | | |
| TWO B/R | 20G | | Spoleto Ln E | 53,500.00 | | 1.4981798 |

---

| PHASE II | | $1,294,500.00 | 100% |
| TOTAL UNIT 21 | | | |

| PHASE II | BLDG.<br>NO/TYPE | UNIT<br>NUMBER | BASIC<br>VALUE | UNDIVIDED PERCENTAGE OF<br>INTEREST IN COMMON ELEMENTS<br>PHASE II |
|---|---|---|---|---|
| TWO-STORY<br>THREE B/R | 11A | 2161<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>THREE B/R | 11A | 2163<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>THREE B/R | 12A | 2151<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>THREE B/R | 12A | 2153<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>TWO B/R | 13G | 2155<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>TWO B/R | 13G | 2157<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>TWO B/R | 14G | 2159<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>TWO B/R | 14G | 2161<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>TWO B/R | 15G | 2171<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>TWO B/R | 15H | 2173<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>THREE B/R | 16A | 2171<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>THREE B/R | 16A | 2173<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>THREE B/R | 17A | 2181<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>THREE B/R | 17A | 2183<br>Polermo Pl | 72,500.00 | 2.0302436 |
| TWO-STORY<br>TWO B/R | 18E | 2176<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>THREE B/R | 18F | 2178<br>Spoleto Ln E | 72,500.00 | 2.0302436 |
| TWO-STORY<br>TWO B/R | 19G | 2165<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>TWO B/R | 19G | 2167<br>Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY<br>TWO B/R | 20G | 2173<br>Spoleto Ln E | 53,500.00 | 1.4981798 |

| PHASE III | BLDG NO/TYPE | UNIT NUMBER | BASIC VALUE | UNDIVIDED PERCENTAGE OF INTEREST IN COMMON ELEMENTS |
|---|---|---|---|---|
| ONE-STORY 2 B/R | 21D | 2172 Polermo Pl | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 21C | 2174 Polermo Pl | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 22D | 2180 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 22C | 2182 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 23D | 2184 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 23C | 2186 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 24D | 2188 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 24C | 2190 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 25D | 2192 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 25C | 2194 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 26D | 2196 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 26C | 2198 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 27D | 2185 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 27C | 2187 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 28C | 2189 Spoleto Ln E | 53,500.00 | 1.4981798 |
| ONE-STORY 2B/R | 28D | 2191 Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY 2B/R | 29G | 2181 Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY 2B/R | 29G | 2183 Spoleto Ln E | 53,500.00 | 1.4981798 |
| TWO-STORY 2B/R | 29G | 2185 Spoleto Ln E | 53,500.00 | 1.4981798 |

PHASE III - TOTAL UNITS 19                1,016,500.00              100%

PHASE I, II, III          TOTAL UNITS 60      TOTAL VALUE  $3,571,000.00

BK S145-267-A

## EXHIBIT "C"

### PHASE I

ALL that lot, piece or tract of land, situate, lying and being in Otranto Subdivision, North Charleston, South Carolina and known and designated as PHASE I of REGIME III, OTRANTO CLUB VILLAS containing TWO AND 32/100 (2.32) acres of land as shown on a plat made by E.M. Seabrook Jr., Inc., dated August 8, 1983 entitled "REGIME III-PHASE ONE-OTRANTO CLUB VILLAS, CITY OF NORTH CHARLESTON, S.C." and recorded in Plat Book AY, Page 25 in the R.M.C. Office Charleston County, South Carolina.

BEING a portion of the property conveyed to the grantor herein by deed of the Otranto Club dated December 2, 1966 and recorded in Book V-86, Page 294 in the R.M.C. Office for Charleston County and recorded in Book A-166, Page 10 in the Clerk of Court's Office for Berkeley County, South Carolina.

### PHASE II & PHASE III

ALL that lot, piece or tract of land, situate, lying and being in Otranto Subdivision, North Charleston, South Carolina, and known and designated as PHASE II of REGIME III, OTRANTO CLUB VILLAS containing TWO AND 30/100 (2.30) Acres of land in Phase II, and TWO AND 12/100 (2.12) Acres of land in Phase III, as shown on a Plat made by E.M. Seabrook, Jr. Inc., dated February 17, 1984 entitled "REGIME III, PHASE TWO OTRANTO CLUB VILLAS, CITY OF NORTH CHARLESTON, S.C." and recorded February 23, 1984 in Book AZ, Page 80 in the R.M.C. Office for Charleston County, South Carolina.

TMS# 485-00-00-111

BK S 145 PC268

## EXHIBIT "D"

## BY-LAWS OF OTRANTO CLUB VILLAS REGIME III
## COUNCIL OF CO-OWNERS, INC.

## ARTICLE I

## INTRODUCTION

**SECTION 1. INTRODUCTION.** These are the By-Laws of the OTRANTO CLUB VILLAS REGIME III COUNCIL OF CO-OWNERS, INC., A South Carolina Corporation, (hereinafter referred to as the "Council of Co-Owners or Owners Association. Terms which are defined in the Master Deed of OTRANTO CLUB VILLAS HORIZONTAL PROPERTY REGIME III are used herein as therein defined.

## ARTICLE II

## BOARD OF DIRECTORS

## SECTION 1. NUMBER AND QUALIFICATION.

(a)    The affairs of the Condominium and the Council of Co-Owners shall be governed by a Board of Directors consisting of no less than three (3) persons and no more than six (6) persons, all of whom excepting the members of the Board of Directors elected by the Declarant, shall be Co-Owners or spouses of Co-Owners if such spouses are residents of the Condominium. Should any Apartment be owned by a Partnership or Corporation, in a fiduciary capacity or otherwis      officer or employee of such owner shall be eligible to .      s a Director. At any meeting at which Directors are to ,a elected, the Co-Owners may, by resolution, adopt specific procedures for conducting such elections, not inconsistent with these By-Laws or the Corporation Laws of the State of South Carolina.

(b)    the terms of at least one-third (1/3) of the members of the Board of Directors shall expire annually.

(c)    when Co-Owners other than the Declarant own more than one-third (1/3) of the Apartments in the Condominium, they shall be entitled to elect not less than one-third (1/3) of the members of the Board of Directors of the Council of Co-Owners. Co-Owners other than the Declarant shall elect not less than a majority of the members of the Board of Directors of the Council of Co-Owners not later than five (5) years after the date of the recording of the original Master Deed, and prior to the expiration of such five-year period, shall be entitled to elect not less than a majority of the members of the Board of Directors upon the sale by Declarant of Sixty (60%) percent of the last phase of Apartments in the Condominium.

BK S 145 PC269

All references in this subsection 'c' to "Apartments in the Condominium" shall mean the aggregate of the Apartments shown in the plot plans filed with the original Declaration. The Declarant shall be entitled to designate not less than one (1) member of the Board of Directors of the Council of Co-Owners so long as it holds for sale in the ordinary course of business any Apartment in such Condominium.

(d)    at any time after Co-Owners other than the Declarant are entitled to elect a member or members of the Board of Directors of the Council of Co-Owners, the Council of Co-Owners shall call and give not less than thirty (30) nor more than forty (40) days notice of a meeting of the Co-Owners for this purpose. Such meeting may be called and the notice given by any Co-Owner if the Council of Co-Owners fails to do so.

SECTION 2.    POWERS AND DUTIES.    The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the Council of Co-Owners and of the Condominium and shall do all such acts and things except as by law or by the Declaration, or by these By-Laws may not be delegated to the Board of Directors by the Co-Owners. Such powers and duties of the Board of Directors shall include, but not be limited to, the following:

(a)    operation, care, surveillance, upkeep and maintenance of the Common Elements and the Limited Common Elements and services.

(b)    determination of the Common Expenses required for the affairs of the Condominium and of the Council of Co-Owners, including, without limitation, the operation and maintenance of the Property.

(c)    assessment and collection of the Common Charges from the Co-Owners.

(d)    employment and dismissal of the personnel necessary for the maintenance, operation, repair and replacement of the general services and the Common Elements or the Limited Common Elements and real and personal property owned by the Council of Co-Owners.

(e)    adoption and amendment of Regulations covering the details of the operation, use and maintenance of the Property following Notice and Comment.

(f)    opening of bank accounts on behalf of the Council of Co-Owners and designating the signatories required therefor.

(g)    purchasing or leasing or otherwise acquiring in the name of the Council of Co-Owners, or its designee,

BK S 145 PG 270

corporate or otherwise, on behalf of all Co-Owners, Apartments offered for sale or lease or surrendered by their owners to the Council of Co-Owners.

(h) purchasing of Apartments at foreclosure or other judicial sales in the name of the Council of Co-Owners or its designee, corporation or otherwise, on behalf of all Co-Owners.

(i) selling, leasing, mortgageing, voting and the votes appurtenant to (other than for the election of members of the Board of Directors), or otherwise dealing with Apartments acquired by, and sub-leasing Apartments leased by the Council of Co-Owners or its designee, corporate or otherwise, on behalf of all Co-Owners.

(j) organizing corporations to act as designees of the Council of Co-Owners in acquiring title to or leasing of Apartments on behalf of all Co-Owners.

(k) granting of licenses, permits and easements over the Common areas for utilities, roads and other purposes reasonably necessary for the maintenance and operation of the project.

(l) obtaining insurance pursuant to the provisions of Article VIII hereof.

(m) making of repairs, restorations, additions and improvements to or alterations of the Property, other than the Apartments.

(n) suing to enforce, or settling and compromising claims of Co-Owners with respect to Common Elements and property which the Council of Co-Owners has the duty to maintain, repair, replace or restore, and other matters concerning the administration of the Condominium.

(o) following Notice and Hearing, levy liquidated charges against Co-Owners for violations of the requirements of the Condominium Instruments and the Regulations, provided no charge shall exceed one hundred ($100.00) Dollars per such violation, together with additional actual damages, cost of collection and reasonable attorneys fees, other than as provided for in Article V, Section 7, of these By-Laws. Each day that such violation exists may be considered a separate violation.

(p) impose reasonable charges for preparation or recording of amendments, to the Condominium Instruments, or for the issuance of reports, certificates, and documentation permitted by the Condominium Instruments or required by law, to the person requesting the same.

-PAGE THREE-

BK S 145 PG271

(q)    without limits but in pursuit of the foregoing powers, and the purposes for which the Council of Co-Owners was created, to do any and all things lawfully permitted to be done by a Corporation under the Laws of the State of South Carolina, and a Condominium Council of Co-Owners under the Horizontal Property Regime Act, (the Condominium Acts, now in effect or as Amended or replaced, if applicable, or if agreed to by the Council of Co-Owners).

(r)    following Notice and Hearing, grant or withhold approval of any action which changes the exterior appearance of the Condominium, alters any portion of the Common Elements, or affects the structural or mechanical integrity of a building, its fixtures and appliances.

(s)    sue and be sued, and appear on behalf and for the benefit of all Co-Owners in any matter of common concern before any court, office, agency, board, commission or department of the state or any political subdivision, and appeal from any judgments, orders, decisions or decrees rendered therein.

(t)    to the extent desirable, create requirements for reasonable reserves for maintenance, repair and replacement of the Buildings and Common Elements, working capital, bad debts, depreciation, obsolescence, or other proper purposes agreed to by the Council of Co-Owners, and designate and establish trust funds for the benefit of Co-Owners or the Council of Co-Owners delegating thereto the collection and assessment powers permitted to the Council of Co-Owners by law or covenant to hold and disburse the funds so collected.

SECTION 1.    MANAGER.    The Board of Directors may employ for the Condominium a Manager, at a compensation established by the Board of Directors, to perform such duties and services as the Board of Directors shall authorize. For the first five years of the operation of the Condominium, the Manager shall be COMBS-McDONALD, INC., and such operation shall be conducted by and between SPOLETO CONSTRUCTION & SUPPLY, INC., and Declarant, dated the_____day of_____, 19___. The Board of Directors may delegate to the Manager all of the powers granted to the Board of Directors by these By-Laws, other than the powers set forth in Article II, Section 2, sub-paragraphs (b), (e), (f), (g), (h), (i), (j), (k), (n), (o), (p), (q), (r) and (s).

SECTION 4.    REMOVAL OF MEMBERS OF THE BOARD OF DIRECTORS    At any regular or special meeting of Co-Owners, any director, other than a director elected by Declarant,

--PAGE FOUR--

BK S 145 PG272

may be removed with or without cause by a majority of the Co-Owners and a successor may then and there or thereafter be elected to fill the vacancy thus created. A director whose removal has been proposed by the Co-Owners shall be given an opportunity to be heard at the meeting if present.

SECTION 5. VACANCIES. Vacancies in the Board of Directors caused by any reason other than the removal of a director by a vote of the Co-Owners, may be filled by vote of a majority of Directors held for that purpose at any time after the occurrence of any such vacancy, even though the directors present at such meeting may constitute less than a quorum, and each person so elected shall be a director for the remainder of the term of the director so replaced, and until a successor shall be elected.

SECTION 6. ORGANIZATION MEETING. The initial Board of Directors shall be appointed or removed by Declarant as the owner of all Apartments and shall serve until the organizational meeting of Co-Owners. The first meeting of the eleceted Board of Directors shall be held within ten (10) days after the first organizational meeting of the Co-Owners at such time and place as shall be fixed by the Co-Owners at the meeting at which such Board of Directors shall have been elected, and no notice shall be necessary to the newly elected directors in order legally to constitute such meeting, providing a majority of the directors shall be present thereat.

SECTION 7. REGULAR MEETINGS. Regular Meetings of the Board of Directors may be held at such time and place as shall be determined from time to time by a majority of the directors, but at least two (2) such meetings shall be held during the fiscal year. Written notice of regular meetings of the Board of Directors shall be given to each director by mail or by hand at least three (3) business day prior to the day named for such meeting.

SECTION 8. SPECIAL MEETINGS. Special meetings of the Board of Directors may be called by the President on three (3) business days written notice to each director given by mail or by hand, which notice shall state the time, place and purpose of the meeting. Special meetings of the Board of Directors may be called in like manner and on like notice on the written request of at least twenty-five (25%) percent of the directors.

SECTION 9. WAIVER OF NOTICE. Any director may, at any time, waive notice of any meeting of the Board of Directors in writing, and such waiver shall be deemed equivalent to the giving of such notice. Attendance by a director at any meeting of the Board of Directors shall

BK S 145 PG273

constitute a waiver of notice by him of the time and place thereof. If all the directors are present at any meeting of the Board of Directors, no notice shall be required and any business may be transacted at such meeting.

SECTION 10. QUORUM OF BOARD OF DIRECTORS. At all meetings of the Board of Directors, a majority of the directors shall constitute a quorum for the transaction of business, and the votes of a majority of the directors present at a meeting at which a quorum is present shall constitute the decision of the Board of Directors. If at any meeting of the Board of there shall be less than a quorum present, a majority of those present may adjourn the meeting from time to time. At any such adjourned meeting at which a quorum is present any business which might have been transacted at the meeting originally called, may be transacted without further notice.

SECTION 11. FIDELITY BONDS. To the extent reasonably available, the Board of Directors shall obtain adequate fidelity bonds for all officers, employees and agents of the Council of Co-Owners handling or responsible for Council of Co-Owners' funds. The premiums on such bonds shall constitute a Common Expense.

SECTION 12. COMPENSATION. No director shall receive any compensation from the Council of Co-Owners for acting as such.

## ARTICLE III

### CO-OWNERS

SECTION 1. ORGANIZATIONAL MEETING. The organizational meeting of the Co-Owners shall take place within three hundred sixty (360) days of the filing of the Master Deed.

SECTION 2. ANNUAL MEETING. Annual meetings of the Co-Owners shall be held on the second (2nd) Tuesday of January of each year or at such time reasonably thereafter as may be adopted by resolution of the Board of Directors. At such meeting, the directors shall be elected by ballot of the Co-Owners, in accordance with the provisions of Article II of these By-Laws. The Co-Owners may transact such other business at such meetings as may properly come before them.

SECTION 3. PLACE OF MEETINGS. Meetings of the Co-Owners shall be held at the Principal office of the Council of Co-Owners or at such other suitable place convenient to the Co-Owners as may be designated by the Board of Directors or the President.

-PAGE SIX-

BK S 145 PG 274

SECTION 4.   SPECIAL MEETINGS.   It shall be the
duty of the President to call a special meeting of the
Co-Owners if so directed by resolution of the Board of
Directors or upon a petition signed and presented to the
secretary by not less than twenty-five (25%) percent of the
Co-Owners.

SECTION 5.   NOTICE OF MEETINGS.   It shall be the
duty of the Secretary to mail a notice of each annual or
special meeting of the Co-Owners, except as provided in
Article II, Section 1 sub-section (d), at least seven (7)
days, but not more than ten (10) days prior to such meeting,
stating the purpose thereof as well as the time and place
where it is to be held, to each Co-Owner of record, at such
address of such Co-Owner as appears in the records of the
Council of Co-Owners. The mailing of a notice of meeting in
the manner provided in this Section shall be considered
service of notice. No business shall be transacted at a
special meeting except as stated in the notice. No notice
need be given to Co-Owners who attend a meeting in person or
who waive notice in writing after the meeting. If all
Co-Owners are present or consent thereto in writing, any
business may be transacted, other than business which
requires consent by mortgagees and for which sufficient
consent by mortgagees has not been received.

SECTION 6.   ADJOURNMENT OF MEETING.   If any
meeting of Co-Owners cannot be held bacause a quorum has not
attended, a majority of the Co-Owners who are present at
such meeting, either in person or by proxy, may adjourn the
meeting to a time not less than forty-eight (48) hours from
the time the original meeting was called.

SECTION 7.   ORDER OF BUSINESS.   The order of
business at all meetings of the Co-Owners shall be as
follows:

(a)   roll call (or check-in procedure);

(b)   proof of notice of meeting;

(c)   reading of minutes of preceding meeting;

(d)   reports;

(e)   election of members of the Board of Directors
(when required);

(f)   old business;

(g)   new business.

SECTION 8.   VOTING.

(a)   when a vote or any other action by Co-Owners

BK S 145 PG275

provided for herein or in the Condominium Instruments requires a specific percentage, portion or fraction of Co-Owners, such percentage, portion or fraction shall mean, unless otherwise stated in the Condominium Instruments, such percentage, portion or fraction in the aggregate of such voting power equal to the percentage interest in the Common Elements shown on Exhibit "B" of the Master Deed.

(b)  if a Apartment is owned by more than one person, such persons shall agree among themselves how a vote for such Apartment shall be cast.  Individual Co-Owners may not cast fractional votes.  A vote by a Co-Owner for the entire ownership interest of a Apartment shall be deemed to be pursuant to a valid proxy, unless another Co-Owner of the same Apartment objects prior to or at the time the vote is cast, in which case the votes of such Co-Owners shall not be counted.

(c)  a Corporate Co-Owners vote may be cast by any officer of such Corporation in the absence of express notice of the designation of a specific person by the Board of Directors or By-Laws of the owning Corporation.  A Partnership Co-Owner's vote may be cast by any general partner of the owning Partnerhsip in the absence of express notice of the designation of a specific person by the owning Partnerhsip.  The Dirctors may require reasonable evidence that a person voting on behalf of a Corporation owner or Partnership owner is qualified so to vote.

(d)  a written proxy terminates eleven (11) months after its date, but shall expire earlier if it specifies a shorter term or limits its use to a particular meeting not yet held but to be held within eleven (11) months from its date.

SECTION 9.   QUORUM.  Except as may be otherwise provided in these By-Laws, twenty-five (25%) percent of the Co-Owners present in person or by proxy, at any meeting of Co-Owners shall constitute a quorum at all meetings of the Co-Owners.

SECTION 10.   MAJORITY VOTE.  The vote of fifty-one (51%) percent of the Co-Owners at a meeting at which a quorum shall be present shall be binding upon all Co-Owners for all purposes except where in the Master Deed or these By-Laws or by law, a higher percentage vote is required.

ARTICLE IV

OFFICERS

SECTION 1.   DESIGNATION.  The principal officers of the Council of Co-Owners shall be the President, the Vice President, the Secretary and the Treasurer, all of whom shall be elected by the Board of Directors.  The Board of Directors may appoint an assistant Treasurer, an assistant

-PAGE EIGHT-

BK S 145 PG 276

Secretary, and such other officers as in its judgement may be necessary. The president and Vice President, but no other officers, need be members of the Board of Directors. Any two (2) offices may be held by the same person, except the offices of President and Vice President, the offices of Secretary and Treasurer, and the offices of President and Secretary. The office of Vice President may be vacant.

SECTION 2. ELECTION OF OFFICERS. The officers of the Council of Co-Owners shall be elected annually by the Board of Directors at the organizational meeting of each new Board of Directors and shall hold office at the pleasure of the Board of Directors.

SECTION 3. REMOVAL OF OFFICERS. Upon the affirmative vote of a majority of the members of the Board of Directors, any officer may be removed, either with or without cause, and his successor may be elected at any regular meeting of the Board of Directors, or at any special meeting of the Board of Directors called for that purpose.

SECTION 4. PRESIDENT. The President shall be the chief executive officer of the Council of Co-Owners. He shall preside at all meetings of the Co-Owners and of the Board of Directors. He shall have all of the general powers and duties which are incident to the office of president of a corporation organized under the Laws of the State of South Carolina and consistent with the powers granted to the Board of Directors herein, including, but not limited to, the power to appoint committees from among the Co-Owners from time to time as he may in his discretion decide is appropriate to assist in the conduct of the affairs of the Council of Co-Owners.

SECTION 5. VICE PRESIDENT. The Vice President shall take the place of the President and perform his duties whenever the President shall be absent or unable to act. If neither the President nor the Vice President is able to act, the Board of Directors shall appoint some other member of the Board of Directors to act in the place of the President on an interim basis. The Vice President shall also perform such other duties as shall from time to time be imposed upon him by the Board of Directors or by the President.

SECTION 6. SECRETARY The Secretary shall keep the minutes of all meetings of the Co-Onwers and the Board of Directors and he shall have charge of such books and papers as the Board of Directors may direct.

SECTION 7. TREASURER. The Treasurer shall have the responsibility for Council of Co-Owners funds and securities and shall be responsible for keeping full and accurate financial records and books of account showing all receipts and disbursements, and for the preparation of all required financial data. He shall be responsible for the

-PAGE NINE-

BK S 145 PG 277

deposit of all monies and other valuable effects in such depositories as may from time to time be designated by the Board of Directors. He may endorse on behalf of the Council of Co-Owners for collection only, checks, notes and other obligations, and shall deposit the same and all monies in the name of and to the credit of the Council of Co-Owners in such banks as the Board may designate. He may have custody of and shall have the power to endorse for transfer other investment instruments owned or controlled by the Council of Co-Owners, or as fiduciary for others.

SECTION 8. AGREEMENTS, CONTRACTS, DEEDS, CHECKS, ETC. All agreements, contracts, deeds, leases, checks and other instruments of the Council of Co-Owners shall be executed by any officer of the Council of Co-Owners or by such other person or persons as may be designated by the Board of Directors.

### ARTICLE V

### COMMON EXPENSES AND COMMON CHARGES

SECTION 1. DETERMINATION OF COMMON EXPENSES AND FIXING OF COMMON CHARGES. The Board of Directors shall from time to time and at least annually, and subject to Notice and Hearing, prepare a budget and include it in an Annual Report to Co-Owners for the Council of Co-Owners and determine the Common Charges and establish their due date. Notwithstanding the foregoing, during the twelve-month period following initial occupancy of the first Apartment to be sold to a Co-Owner other than the Declarant, the Common Charges set forth in the budget prepared by the Declarant and given to each Co-Owner prior to the sale of a Apartment to that Co-Owner, cannot be increased by more than twenty (20%) percent unless necessary to provide for unexpected increases in fixed recurring expenses of the Council of Co-Owners.

SECTION 2. COMMON EXPENSES: The Common Expenses shall include:

(a) the costs of maintaining and repairing the Common Elements and any real and personal property owned by the Council of Co-Owners, including the cost of a Manager.

(b) the costs of restoring or repairing the Condominium, to the extent provided in Article IX.

(c) such amounts as the Board of Directors deems proper for the operation of the Condominium and the Council of Co-Owners, including without limitation an amount for a Common Expense working capital reserve, and sums necessary to make up any deficit in income from Common Charges in any prior year.

-PAGE TEN-

BK S 145 PG 278

(d)    expenses incurred in leasing or otherwise acquiring the right to use, either exclusively or in common with others, recreational or other facilities for the benefit of all Co-Owners.

(e)    such amounts as may be required for the purchase or lease of any Apartment to be acquired by the Council of Co-Owners or its Designee.

(f)    premiums for insurance pertaining to the Condominium and the Council of Co-Owners.

(g)    any other costs and expenses in connection with the operation and administration of the Condominium and the Council of Co-Owners designated as Common Expenses by the Board of Directors or by vote of the Co-Owners.

(h)    such amounts as the Board of Directors deems proper for a reserve fund for replacement of capital improvements, which may be deposited in a trust fund for holding and disbursing amounts collected for such purposes.

SECTION 3.    COMMON CHARGES    The Common Expenses shall be assessed against all Apartments (and their owners) as Common Charges in proportion to their percentage interest in the Common Elements as shown on Exhibit "B" of the Master Deed.

SECTION 4.    PAYMENT OF COMMON CHARGES.    All Co-Owners shall be obligated to pay the Common Charges or installments thereof at such time or times as the Board of Directors shall determine.    All payments shall be paid by the fifth (5th) day of each month.    Payments made thereafter shall be subject to a ten (10%) percent penalty.

SECTION 5.    NO WAIVER OF LIABILITY.    No Co-Owner may exempt himself from liability for Common Charges assessed against his Apartment subsequent to a sale, transfer or other conveyance of all such Co-Owner's interest in such Apartment.

SECTION 6.    NON-LIABILTY AFTER CONVENANCE.    No Co-Owner shall be liable for the payment of any Common Charges assessed against his Apartment subsequent to a sale, transfer or other conveyance of all such Co-Owner's interest in such Apartment.

SECTION 7. REMEDIES.    If any Common Charge is not paid when due, such Common Charge shall be delinquent and together with interest and late charges as herein provided and cost of collection including reasonable attorneys fees, shall be a continuing lien on the Apartment of the delinquent owner, as well as an indebteness of the Co-Owner.  Interest on delinquent Common Charges shall be established by the Board of Directors, subject to Notice and Comment, at the highest rate not usurious, and shall accrue on the delinquent amount from the due date thereof until collected.

-PAGE ELEVEN-

The Board of Directors may by resolution, subject to Notice and Comment, establish late charges to defray the extra expenses and costs incurred by a Co-Owner's failure to pay Common Charges promptly.   The Board of Directors shall attempt to recover such amounts by an action brought against such Co-Owner or by foreclosure of the lien, or both.   The Board of Directors, on behalf of all Co-Owners, shall have the power to purchase such Apartment at a foreclosure sale and to acquire, hold, lease, mortgage, vote the votes appurtenant thereof (other than for the election of members of the Board of Directors), convey or otherwise deal with the same.   A suit to recover a money judgement for delinquent amounts shall be maintainable without foreclosing or waiving the liens securing the same.   Upon title to a Apartment vesting in the heirs, successors, devisees, personal representatives or assigns of the owner, they shall become personally liable for the payment of such Common Charges assessed prior to such acquisition, except:

(a)   the lien for all sums assessed by the Council of Co-Owners, but unpaid, for the share of the Common Expenses chargeable to any Apartment shall be prior to all other liens, except all sums unpaid on mortgages of record.

(b)   where a mortgagee or a purchaser at a foreclosure sale obtains title to a Apartment, such acquirer of title, its or his heirs, successors, transferees or assigns, shall not be liable for the unpaid share of the Common Expenses or assessments by the Council of Co-Owners chargeable to such Apartment which became due prior to the acquisition of title to such Apartment by such acquirer, but such expenses or assessments, if not fully satisfied out of the proceeds of such sale, shall become Common Expenses collectible from all of the Co-Owners, including such acquirer, its or his heirs, successors, transferees or assigns.

(c)   the board of directors shall upon demand at any time, furnish to any Co-Owner or applicable mortgagee, a certificate in writing signed by an officer of the Council of Co-Owners, or an authorized agent of the Council of Co-Owners, setting forth any Common Charges then due and unpaid.   Such certificate shall be conclusive evidence of payment of any Common Charges not therein stated as being unpaid.

(d)   Notwithstanding anything in these By-Laws to the contrary, it is declared, that until January 15, 1985, each Apartment shall be exempt from the assessment created herein until such time as the Apartment is conveyed by the Developer to a Grantee owner.   However, until the Developer shall be assessed and pay to the Association, in lieu of an assessment thereon, a sum equal to the prorata share for each such apartment of the actual amount of operating expenditure deficits of the Association, excluding delinquent assessments. for purposes of definition, operating expenditure deficits shall include any reserves for replacements or operating reserves.   Commencing January 1, 1986. the Developer shall be subject to assessments as provided in these By-Laws as the same are paid by Apartment co-owners.

-PAGE TWELVE-

BK S 1 4 5 PG 2 8 0

## ARTICLE VI

## OPERATION OF THE PROPERTY

SECTION 1.    ABATEMENT AND ENJOINMENT OF VIOLATIONS
BY CO-OWNERS    The violation of any Regulation adopted by the
Board of Directors, or the breach of any provision of a
Concominium Instrument, shall give the Board of Directors
the rights, subject to Notice and Hearing, in addition to
any other rights set forth in these By-Laws:

(i)    to enter the Apartment in which, or as to
which, such violation or breach exists and to summarily
abate and remove, at the expense of the defaulting Co-Owner,
any structure, things or condition that may exist therein
contrary to the intent and meaning of the provisions hereof,
and the Board of Directors shall not thereby be deemed
liable for any manner of trespass; or

(ii)    to enjoin, abate or remedy by appropriate
legal proceedings, either at law or in equity, the
continuance of any such breach.

SECTION 2.    MAINTENANCE AND REPAIR.

(a)    except as provided in Article IX, all
maintenance or any repairs to any Apartment, ordinary or
extraordinary, shall be made by and at the expense of the
owner of such Apartment.    Each Co-Owner shall also be
recponsible for all damages to any and all other Apartments
and to the Common Elements, that his failure so to do may
engender.

(b) all maintenance, repairs and replacements to
the Common Elements (unless otherwise provided in Article IX
cr in Article VI, Section 2, sub-section (c), shall be made
by the Board of Directors, and be charges to all Co-Owners
as a Common Expense (unless necessitated by the negligence,
misuse or neglect of a Co-Owner, or provided for under
Article VI, Section 8 hereby in which case such expense
shall be charges to such Co-Owner).

(c)    except as provided in Article IX, all
maintenance of and nonstructural repairs to the Limited
Common Elements shall be performed by and at the expense of
the owner of the Apartment to which such Limited Common
Elements are appurtenant.    If a Co-Owner fails to keep a
Limited Common Element for which he is responsible in a
sightly and safe condition and in good repair, the Council
of Co-Owners may perform the necessary maintenance and
repairs and charge the cost thereof to such Co-Owner, which
cost shall be treated for all purposes if not paid when due,
as a past due general assessment subject to the remedies
provided for in Article V, Section 7 hereof.

**SECTION 3.    RESTRICTIONS ON CONDUCT AND USE OF PROPERTY.**    In order to provide for congenial occupancy of the Property and for the protection of the values of the Apartments, the use of the Property shall be restricted to and shall be in accordance with the following provisions (which may be more specifically detailed in the Regulations):

## EXHIBIT "G"

(a)    the Common Elements shall be used only for the furnishing of the services and facilities for which they are designed and reasonably suited, and which are incidental to the use of the Apartments to which they are appurtenant. The Common Elements shall be for the sole use of Declarant, residential Co-Owners, their tenants, guests and invitees.

(b)    no nuisances shall be allowed on the Property nor shall any use or practice be allowed which is a source of annoyance to the residents or which interferes with the peaceful possession or proper use of the Property by its residents.

(c)    all garage doors shall be kept in a closed position at all times except for entering or exiting said garage area.

(d)    all drapes must be lined and of neutral color on the outside facing the Common Areas.

(e)    small pets will be allowed when kept in Regime approved fenced areas only. Pets found outside of said approved area will be subject to Municipality and State leash laws.

(f)    vehicles that do not present an acceptable appearance, solely at the descretion of the Regime Management, will not be allowed. No repairs of vehicles will be allowed on the premises. No campers, trailers, trucks, wagons, toys or other items will be allowed within view from the street or from any other unit.

(g)    fencing will be allowed only at locations determined by the Regime Management and will be constructed of materials approved solely by the Regime Management.

(h)    exterior of all units, plants, landscaping and grass will be professionally maintained by the Regime Management.

(i)    boats must be kept inside a garage with door closed or a specially designated area.

(j)  no immoral, improper, offensive, or unlawful use shall be made of the Property or any part thereof, and all valid laws, zoning ordinances and regulations of all governmental bodies having jurisdiction thereof shall be observed.  Violations of laws, orders,rules, regulations or requirements of any governmental agency, having jurisdiction thereof, relating to any portion of the Property, shall be corrected, by and at the sole expense of the Co-Owners or the Board of Directors, whichever shall have the obligation to maintain or repair such portions of the Property.

(k)  any lease of an Apartment shall be consistent with these By-Laws.  The Board of Directors shall have the power to terminate such lease, and begin summary proceedings to evict the tenant in the name of Co-Owner/Landlord thereunder, in the event of failure by the tenant to perform any obligation in the Condominium Instruments and Regulations.  Each tenant of an Apartment shall be deemed to have attorned to the Council of Co-Owenrs as Landlord under the lease with respect to enforcement of porvision of the Condominium Instruments and Regulations, provided that no enforcement proceedings shall be undertaken against a tenant by the Council of Co-Owners without prior notice to the Co-Owner, and a reasonable opportunity given to the Co-Owner to cure any default or to enforce the provision, before the Council of Co-Owners will proceed with enforcement proceedings.

(l)  no "For Sale" or "For Rent" signs shall be placed on any Property after the initial sell out period of each phase.

SECTION    4.    ADDITIONS, ALTERATIONS OR IMPROVEMENTS.  Whenever in the judgement of the Board of Directors the Common Elements shall require additions, alterations or improvements which are intended to be assessed as Common Charges and the cost of which will equal or exceed a sum equal to twenty (20%) percent of the operating budget then in effect, the making of such additions, alterations or improvements shall require the approval by a majority of Co-Owners and by mortgagees holding mortgages on fifty-one (51%) percent of the number of Apartments subject to mortgage.  Any additions, alterations or improvements costing less than such sum may be voted upon by the Board of Directors.

SECTION 5.  ADDITIONS, ALTERATIONS OR IMPROVEMENTS BY CO-OWNERS.  No Co-Owner shall make any structural addition, structural alteration, or structural improvement in or to the Condominium without the prior written consent thereto of the Board of Directors.  The Board of Directors shall have the obligation to answer any written request by a Co-Owner for approval of a proposed structural addition,

-FIFTEEN-

BK S 145 PG 283

alteration or improvement within sixty (60) days after such request and failure to do so within the stipulated time shall constitute a consent by the Board of Directors to the proposed addition, alteration or improvement. Any application to any governmental authority for permit to make an addition, alteration or improvement shall be executed by the Board of Directors only, without however, incurring any liability on the part of any Director of the Council of Co-Owners to any contractor, subcontractor or materialsman on account of such addition, alteration or improvement, or to any person having any claim for injury to persons or damage to property arising therefrom. The provisions of this Section may be superceded in whole or in part by resolution of the Board of Directors and their administration may be assigned to a committee, subject to Notice and Comment. The provisions of this Section shall not apply to portions of the Condominium while owned by the Declarant.

Subject to compliance with the provisions of the preceding paragraph of this Section 5, a Co-Owner, at his sole expense, may alter a partition wall between adjoining Apartments owned by him by creating an opening therein between such Apartments, provided that such alteration or condition does not adversely affect the support of any Apartment to the strength, utility, effectiveness or structural integrity of any of the Common Elements, or wires, conduits, ducts, pipes, flues or other facilities which run through the affected wall and which furnish utility or other services to any other Apartments or to any of the Common Elements. A Co-Owner may also, at such owner's expense, enclose any hallway which adjoins and serves only Apartments owned by such owner and which constitutes before such enclosure, Limited Common Elements appurtenant only to those Apartments. Provided that the foregoing conditions have been met, the Board of Directors shall be deemed to have consented to such alteration or enclosure unless the Board of Directors determines from the information contained in the written request for the Board of Director's consent, that the proposed alteration would adversely affect the health, safety or quiet enjoyment of other Co-Owners or that any of the other conditions which such Co-Owner must satisfy hereunder have not been met. Any Co-Owner altering a wall or enclosing part of a hallway pursuant to this Section 5 shall, at his sole expense and prior to commencing the work:

(i)    provided for waivers of all mechanics lien rights which may arise as a result of the alteration;

(ii)    provided certificates of insurance acceptable to the Board of Directors insuring against all losses commonly insured against which might arise out of the work, naming the Council of Co-Owners as an additional insured;

-PAGE SIXTEEN-

BK S 1 4 5 PG 2 8 4

(iii)  indemnify and hold the Council of Co-Owners and the other Co-Owners harmless from the effect of the work;

(iv)  minimize the disturbance of other Co-Owners caused by the work; and

(v)  indemnify and hold the Council of Co-Owners harmless from any costs, fees or expenses incurred or suffered by the Council of Co-Owners in connection with said work by the Co-Owner or with the request made by the Co-Owner for consent, including, without limitation, the reasonable fees and charges of any attorneys, engineers, contractors, architects or similar professionals retained or consulted by the Council of Co-Owners in connection therewith.

Upon completion of any alterations for a wall opening between Apartments or an enclosing part as described herein, and as consented to by the Board of Directors, the affected Co-Owner, at his sole expense, shall produce and shall deliver to the Council of Co-Owners a copy of "as built" plans and specifications for said alteration. Thereafter, so long as such an opening in the wall exists, the affected Co-Owner shall have an easement to pass through the same between his wall to its original condition or remove such enclosure by the same procedure and by fulfilling all of the conditions for such restoration as are applicable to creating such opening or enclosure pursuant to this Section 5.

SECTION 6.  RIGHT OF ACCESS.  The Manager and any other person authorized by the Board of Directors or the Manager shall have the right of access to all portions of the Property for the purpose of correcting any condition threatening a Apartment or the Common Elements, and for the purpose of performing installations, alterations or repairs, provided that requests for entry are made in advance and that any such entry is at a time reasonably convenient to the affected Co-Owner.  In case of an emergency, no such request or notice is required and such right of entry shall be immediate, whether the Co-Owner is present at the time or not.

SECTION 7.  REGULATIONS.  Regulations concerning the use of the Apartments and the Common and Limited Elements may be promulgated and amended by the Board of Directors, subject to Notice and Comment.  Notice of such Regulations shall be given to each Co-Owner prior to the time when the same shall become effective.  Initital Regulations, which shall be effective until amended by the Board of Directors, are annexed hereto and made a part hereof as Exhibit "G".

-PAGE SEVENTEEN-

BK S 145 PG285

**SECTION 8.  SPECIAL SERVICES.**  If upon request, or on an emergency basis, the Council of Co-Owners provides any service to any Apartment, other than the services described in the Condominium Instruments to be provided to all Apartments, those services shall be specially assessed against the Apartment to which the service is provided, and may be collected in the same manner as a Common Charge aginst such Apartment.

## ARTICLE VII

### MORTGAGES

**SECTION 1.  NOTICE TO BOARD OF DIRECTORS.**  A Co-Owner who mortgages his Apartment shall notify the Council of Co-Owners of the name and address of his mortgagee.  Such mortgagee shall thereafter be entitled to all rights and privileges under the Master Deed for Mortgagees.

**SECTION 2.  NOTICE OF DEFAULT.**  The Board of Directors, when giving notice to a Co-Owner of a default, shall send a copy of such notice to each holder of a mortgage covering such Apartment whose name and address has heretofore been furnished to the Board of Directors.

**SECTION 3.  EXAMINATION OF BOOKS.**  The Council of Co-Owners shall maintain a copy of all documents pertaining to the establishment and operation of said Regime, including Master Deed and Declaration, By-Laws, Rules and Regulations, financial books, records and statements, Management Agreement and other information of interest to unit owners, mortgagees and insurers of said properties.  All such information shall be available to said unit owners, mortgagees and insurers for inspection, upon request, during normal business hours or under other reasonable circumstances.

## ARTICLE VIII

### INSURANCE

**SECTION 1.  COVERAGE.**  To the extent reasonably available, the Board of Directors shall obtain and maintain insurance coverage as set forth in this Article VIII, Sections 2, 3 and 4.  Premiums for such insurance shall be Common Expenses.

**SECTION 2.  PHYSICAL DAMAGE.**  A buildings and improvements (as defined in Section 7 hereof), and all of the personal property owned by the Council of Co-Owners shall be insured against risk of physical damage as hereinafter set forth in this Article VII.

-PAGE EIGHTEEN-

BK S 145 PG 286

**SECTION 3.   AMOUNTS.**   As to real property, including the Building and any other improvements on the land, for an amount equal to the full replacement cost of such property subject to physical damage; as to personal property, for an amount equal to its actual cash value.

**SECTION 4.   RISKS INSURED AGAINST.**   The insurance shall afford protection against loss or damage by reason of:

(a)   fire and other perils normally covered by extended coverage.

(b)   vandalism and malicious mischief.

(c)   such other risk of physical damage as from time to time may be customarily covered with respect to buildings and imrovements similar in construction, location and use as those on the Property, including, without limitation, flood insurance and builders risk coverage for improvements under construction.

(d)   such other risks of physical damage as the Board of Directors may from time to time deem appropriate.

**SECTION 5.   OTHER PROVISIONS**   The insurance shall include, without limitation, the following provisions:

(a)   waviers by the insurer of rights of subrogation, other than those based on fraud or criminal acts, against the Council of Co-Owners, its directors and officers, and the Co-Owners.

(b)   that the insurance shall not be affected or diminished by reason of any other insurance carried by any Co-Owner or mortgagee of a Apartment.

(c)   that the insurance shall not be affected or diminished by any act or neglect of any Co-Owner or any occupants or owners of any improvements when such act or neglect is not within the control of the Council of Co-Owners.

(d)   that the insurance shall not be affected or diminished by failure of any Co-Owner or any occupants of any improvements to comply with any warranty or condition when such failure to comply is not within the control of the Council of Co-Owners.

(e)   such deductible as to loss, and co-insurance features, as the Board of Directors in its sole judgement deems prudent and economical.

BK S 145 PG 287

(f)    that the insurance may not be cancelled or substantially modified (except for the addition of property or increases in amount of coverage) without at least thirty (30) days prior written notice to the named insured, and to all mortgagees.

(g)    provisions for identification of mortgagees and for the allocation of their several interests to specific Apartments or other property.

(h)    the standard mortgagee clause, except that any loss otherwise payable to named mortgagees shall be payable in the manner set forth in sub-section (j) hereinbelow.

(i)    adjustment of loss shall be made with the Board of Directors.

(j)    proceeds for losses shall be payable to the Council of Co-Owners or its appointed Trustee.

(k)    the named insured shall be the Council of Co-Owners.

SECTION 6.    EVIDENCE OF INSURANCE.    The insurer shall make arrangements for Certificates of Insurance for all mortgagees and Co-Owners.

SECTION 7.    DEFINITION.    As used in this Section, the term "buildings and improvements" shall include, without limitation, standard partition walls, fixtures and installations and replacements thereof as shown on such plans or other records as the Board of Directors may adopt for this purpose, and the insurance may exclude or limit the amount of insurance for fixtures, alterations, installations or additions situated within a Apartment and made or acquired at the expense of the Co-Owner of such Apartment.

SECTION 8.    LIABILITY INSURANCE.    The Board of Directors shall obtain and maintain, public liability insurance for bodily injury and property damage in such limits as the Board of Directors may from time to time determine, insuring the Council of Co-Owners, the Manager (at the discretion of the Board of Directors), and each Co-Owner with respect to their liability arising from ownership, maintenance or repair of the Property, including, without limitation, liability arising from construction operations (except as provided in sub-section (d) hereinbelow).    Such liability insurance shall also cover cross-liability claims among the insured parties.    The Board of Directors shall review such limits at least annually. The insurance provided under this Section shall include, without limitation, the following provisions:

BK S 745 PC 288

(a)  that the insurance shall not be affected or
diminished by any act or neglect of any Co-Owner or any
occupants of any improvements when such act or neglect is
not within the control of the Council of Co-Owners.

(b)  that the insurance shall not be affected or
diminished by failure of any Co-Owner or any occupants of
any improvements to comply with any warranty or condition
when such failure to comply is not within the control of the
Council of Co-Owners.

(c)  waivers by the insurer of rights of
subrogation, other than those based on fraud or criminal
acts, against the Co-Owners, and the Council of Co-Owners,
its directors and officers.

(d)  no liability insurance need be provided for a
Co-Owner with respect to his Apartment and any Limited
Common Elements used exclusively by him.

SECTION 9.  WORKMANS COMPENSATION INSURANCE.  The
Board of Directors shall obtain and maintain Workmans
Compensation Insurance if necessary to meet the requirements
of the Laws of the State of South Carolina.

## ARTICLE IX

### DAMAGE TO OR DESTRUCTION OF PROEPRTY

SECTION 1.  DUTY TO REPAIR OR RESTORE.  Any
portion of the Condominium damaged or destroyed shall be
repaired or restored promptly by the Board of Directors,
except as provided in Sections 4, 5 and 7 hereinbelow.

SECTION 2.  ESTIMATE OF COST.  Promptly after the
damage or destruction and thereafter as it deems advisable,
the Board of Directors shall obtain reliable and detailed
estimates of the cost of repair or restoration.  The Board
of Directors may retain the services of an architect to
assist in the determination of such estimates and in the
supervision of repair and restoration.

SECTION 3.  COLLECTION OF CONSTRUCTION FUNDS.
Construction funds may consist of insurance proceeds,
condemnation awards, proceeds of assessments against
Co-Owners, and other funds received on account of or arising
out of the damage or destruction.

(a)  INSURANCE PROCEEDS.  The Board of Directors
shall adjust losses under physical damage insurance
policies.  Such losses shall be payalbe in accordance with
Article VIII, Section 2, sub-section (c) herein.

BK S 145 PG 289

(b)  ASSESSMENT OF OWNERS.  If insurance proceeds and funds described in sub-section (c) hereinbelow are insufficient for the necessary repair and restoration to be done at the Council of Co-Owners cost, such deficiency shall be, unless otherwise provided by law, a Common Expense and the Board of Directors shall assess Common Charges therefor payable as specified in the resolution authorizing the same, which Common Charges shall be turned over by the Board of Directors to the Trustee.

(c)  PAYMENTS BY OTHERS.  All funds received on account of or arising out of such damage or destruction shall be turned over by the Board of Directors to the Trustee if one is appointed.

(d)  CONDEMNATION AWARDS.  Condemnation awards shall be payable in accordance with ARTICLE XXII of the Master Deed.

SECTION 4.  PLANS AND SPECIFICATIONS.  Any repair or restoration must be either substantially in accordance with the plans adopted by the Board of Directors pursuant to Section 7 herein, (and may also include additional improvements for which funds are made available), or according to plans and specifications approved by the Board of Directors and by a majority of the Co-Owners and the holders of first mortgages encumbering seventy-five (75%) percent of the Apartments subject to mortgages.

SECTION 5.  APARTMENTS.  Damage to or destruction of improvements situated within a Apartment hall be repaired or restored (except after a determination not to repair or restore pursuant to ARTICLE IX, Section 7 herein) as follows:

(a)  CONSTRUCTION FUNDS.

(i)  to the extent that such damage or destruction is covered by insurance obtained pursuant to Article VIII hereof or by a condemnation award not specifically allocated to a Co-Owner, the proceeds of such insurance or award shall be made available for repair or restoration of the Apartment.

(ii)  to the extent that such damage or destruction is not covered by insurance obtained pursuant to ARTICLE VIII hereof or by a condemnation award not specifically allocated to the Co-Owner, the Co-Owner shall be responsible for the cost of repair and restoration.

BK S 145 PG 290

(b)  **PERFORMANCE OF WORK AND PAYMENT.**

(i)    if there is no damage or destruction of Common Elements, or if the combined damage or destruction of all effected Apartments and Common Elements does not exceed Ten Thousand ($10,000.00) Dollars, the repair or restoration of each Apartment shall be effected by its Co-Owner.

(ii)    if there is damage to or destruction of Common Elements and the combined damage to or destruction of all effected Apartments and Common Elements exceeds Ten Thousand ($10,000.00) Dollars, the repair or restoration of the Common Elements and Apartments shall be effected by the Board of Directors, to the extent that construction funds as described in ARTICLE IX, Section 5, sub-section (a) hereof are available and to the extend that the Co-Owners make payment as hereafter provided.

Each Co-Owner shall pay to the Board of Directors such sum as is necessary, according to the estimate of cost described in ARTICLE IX, Section 2 hereof, to cover any part of the cost of repair or restoration, which is not covered by insurance obtain pursuant to ARTICLE VIII hereof.

(iii)  **INSURANCE BY OWNERS.**  Each Owner shall be responsible for obtaining such amounts of the following types of insurance as he deems necessary or desirable:  (1) hazard insurance on his Apartment and its contents for his own benefit, and (2)  liability insurance covering accidents occuring within his Apartment.  Any Owner who obtains hazard insurance for his own benefit shall within thirty (30) days of obtaining the same deliver to the Board of Directors a copy of the policy of insurance.

(c)  **DEDUCTIBLES.**  To the extent that there is a shortage of funds resulting from a provision for deductibles in the insurance obtained pursuant to ARTICLE VIII herein, each affected Co-Owner shall be required to contribute such shortage in proportion to the damage to his Unit.  The balance of such shortage after deduction of such required contributions shall be assessed against all Co-Owners as a Common Expense.

**SECTION 6.    DISBURSEMENT OF CONSTRUCTION FUNDS.** The Trustee, as defined in Section 9 herein, if appointed, shall deduct from the construction funds its actual costs, expenses and a reasonable fee for the performance of its duties, and shall disburse the balance in the following manner:

(a)    **DAMAGE    OR    DESTRUCTION    NOT    EXCEEDING** $10,000.00.  In the event of damage or destruction which is the responsiblity of the Board of Directors to insure, not exceeding Ten Thousand ($10,000.00) Dollars, and upon receipt of proper certification of such fact from the Board of Directors, the Trustee, if appointed, shall deliver such balance to the Board of Directors and the Board of Directors shall thereupon administer said balance in the same manner as required by the Trustee, if appointed, pursuant to this ARTICLE IX.

-PAGE TWENTY-THREE-

(b)   **DAMAGE OR DESTRUCTION EXCEEDING $10,000.00.**
In the event of damage or destruction which is the
responsibility of the Board of Directors to insure exceeding
Ten Thousand ($10,000.00) Dollars, a Trustee shall be
appointed by the Board of Directors and shall apply such
balance to pay directly, or to reimburse the Board of
Directors for the payment for, the costs of such repair or
restoration, including the cost of temporary repairs for the
protection of the property pending the completion of
permanent repairs and restoration, upon written request of
the Board of Directors in accordance with Section 8,
sub-section (a) i, ii and iii herein, in proporation to the
amount paid by each.   All portions of such payment by
Co-Owners not expended as herein provided shall be paid to
the Board of Directors and shall be part of the general
income of the Council of Co-Owners.

    **SECTION 7,.   DETERMINATION NOT TO REPAIR OR
RESTORE.**   If the Condominium is damaged to the extent of
two-thirds (2/3) of its then replacement cost, the property
remaining shall be deemed to be owned in common by the
Co-Owners and each Co-Owner shall own that percentage of the
undivided interest in common as he previously owned in the
Common Elements, unless all the Co-Owners and the holders of
mortgage liens affecting at least seventy-five (75%) percent
of the Apartments subject to mortgages, agree otherwise and
vote to proceed with repair or restoration.   Any liens
affecting any of the Units shall be deemed to be transferred
in accordance with the existing priorities to the percentage
of the undivided interest of the Co-Owner of the Property:
and the Property shall be subject to an action for partition
of sale, together with the net proceeds of the insurance on
the Property, if any, shall be considered as one fund and
shall be divided among all the Co-Owners in accordance with
their interests therein, after first paying all liens out of
each of the respective interests.

    **SECTION 8.   CERTIFICATES**   The Trustee, if
appointed, may reply on the following certifications:

    (a)   **BY THE BOARD OF DIRECTORS.**   The Board of
Directors shall certify to the Trustee, if appointed, in
writing as to the following matters:

    (i)   whether or not damaged or destroyed property
is to be repaired or restored.

    (ii)   in the opinion of the Board of Directors the
cost of repair or restoration may exceed Ten Thousand
($10,000.00) Dollars.

    (iii)   the amount or amounts to be paid for
repairs or restoration and the names and addresses of the
parties to whom such amounts are to be paid.

BK S 145 PG 292

(b)  **BY ATTORNEYS**    The Board of Directors shall furnish the Trustee, if appointed, in the event that any payments are to be made to owners or mortgagees, with an Attorney's Certificate of Title or Title Insurance Policy based on a search of the land records from the date of the recording of the original Declaration stating the names of the Co-Owners and the Mortgagees.

SECTION 9.    TRUSTEE.    The Board of Directors shall enter into and keep in force a trust agreement with a bank in the State of South Carolina with trust powers to receive, administer and disburse funds pursuant to this ARTICLE IX. Such trust agreement shall incorporate the Master Deed and By-Laws by reference and shall provide that upon termination thereof, all monies or funds held by the Trustee shall be turned over only to a successor Trustee which shall also be a bank in the State of South Carolina with trust powers designated Trustee pursuant to this ARTICLE IX.    No amendment of the Master Deed or these By-Laws shall be binding on the Trustee until the Trustee receives notice of such amendment.

## ARTICLE X

## LIMITATIONS OF LIABILITY - INDEMNIFICATION

SECTION .    TORT LIABILITY.    The Co-Owners and the Council of Co-Owners shall each be deemed to have released and exonerated each other from any tort liability other than that based on fraud or criminal acts to the extent to which such liability is satisfied by proceeds of isnurance carried by any such party.

SECTION 2.    CONTRACTS.    No Co-Owner and no director or officer of the Council of Co-Owners shall have any personal liability under any contract made by any of them on behalf of the Council of Co-Owners, except for the obligation of Co-Owners to pay Common Charges lawfully assessed.

SECTION 3.    INDEMNIFICATION.    The directors and officers of the Council of Co-Owners shall be entitled to indemnification as provided in Section 33-13-180, Code of Laws of South Carolina, 1976, as Amended, (the provisions of which are hereby incorporated by reference and made a part hereof).    The Board of Directors may obtain insurance covering such indemnification and the premiums for such insurance shall be a Common Expense.

BK S 145 PG 293

## ARTICLE XI

### RECORDS

SECTION 1.   RECORDS AND AUDITS   The Declarant and the Council of Co-Owners shall maintain accounting records according to generally accepted accounting practices.   Such records shall include:

(i)  a record of all receipts and expenditures;

(ii)   an account for each Unit which shall designate the name and address of each Co-Owner, the amount of each Common Charge, the dates on which the Common Charge comes due, the amounts paid in the account, and the balance due.

(iii) a record of the actual cost, irrespective of discounts and allowances, of the maintenance of the Common Elements;

(iv)   an accurate account of the current balance in the reserve for replacement and for emergency repairs.

From the date of the recording of the Master Deed until the Declarant relinquishes control of the Council of Co-owners, he shall cause to have prepared a certified audit of the books of the Council of Co-Owners by a Certified Public Accountant not less than once in every claendar year which shall be available for examination by the Co-Owners. Thereafter on the written petition of Co-Owners of not less than twenty-five (25%) percent of the Units, a certified audit by an independent Certified Public Accountant shall be made, but not more than once in any consecutive twelve-month period; provided in cost of the audit shall be a Common Expense.

### ARTICLE XII

### RIGHTS TO NOTICE AND COMMENT AND NOTICE AND HEARING

SECTION 1.       RIGHT TO NOTICE AND COMMENT. Co-Owners have the right to receive notice of certain actions proposed to be taken by the Board of Directors or by Committees and the right to comment orally or in writing on the proposed action, where the By-Laws, Rules and Regulations or resolutions provide for Notice and Comment. The right to Notice and Comment does not entitle a Co-Owner to be heard at a formally constituted meeting. Notice shall be given to each Co-Owner having such rights hereunder in writing and shall be delivered personally or by mail at such address, of such Co-Owner as appears in the records of the Council of Co-Owners, or published in a newsletter or similar publication which is routinely circulated throughout

BK S 145 PG 294

the property.  Unless a specific requirement for the time of
notice is provided elsewhere, such notice shall be given not
less than ten (10) days before the proposed action is to be
taken.

SECTION 2.    RIGHT TO NOTICE AND HEARING.
Co-Owners have the right to receive notice of certain
actions proposed to be taken by the Board of Directors or by
Committees, and the right to be heard at a formally
constituted meeting, where the By-Laws, Rules and
Regulations or resolution provide for Notice and Hearing.
The notice of the meeting shall describe the proposed action
and shall be given in the same manner as provided for in
Section 12 hereinabove.  Notice and Hearing shall be
provided by the party proposing to take the action, such as
the Board of Directors, an officer, a Committee or the
Manager.  At the meeting, the affected person shall have the
right, personally or by a representative, to give testimony
orally, in writing or both (as specified in the notice),
subject to reasonable rules or procedure established by the
party conducting the meeting to assume a prompt and orderly
resolution of the issues.  Such evidence shall be considered
in making the decision but shall not bind the decision
makers.   The affected person shall be notified of the
decision in the same manner in which notice of the meeting
was given.

SECTION 3.   APPEALS.   Any person having a right
to Notice and Hearing shall have the right to appeal to the
Board of Directors from a decision of persons other than the
Board of Directors by filing a written notice of appeal with
the Board of Directors within ten (10) days after being
notified of the decision.  The Board of Directors shall
thereupon conduct a hearing, giving the same notice and
observing the same procedures as were required for the
original meeting.

## ARTICLE XIII

### OPEN MEETINGS

SECTION 1.   ACCESS.   All meetings of the Board of
Directors and of Committees at which action is to be taken
by vote of such meeting, shall be open to the Co-Owners,
except as hereinafter provided.

SECTION 2.   NOTICE.   Notice of every such meeting
shall be given not less than twenty-four (24) hours prior to
the time set for such meeting, by posting such notice in a
conspicuous location at the office of the Council of
Co-Owners, except that such notice will not be required if
an emergency situation requires that the meeting be held
without delay.

BK S 145 PG 295

**SECTION 3.  EXECUTIVE SESSIONS.**  Meetings may be held in Executive Session, without giving notice and without the requirement that they be open to the Co-Owners, provided that no action is taken at such sessions requiring the affirmative vote of the meeting.

## ARTICLE XIV

### MISCELLANEOUS

**SECTION 1.  NOTICES.**  All notices to the Council of Co-Owners of the Board of Directors shall be delivered to the office of the Manager, or if there be no Manager, to the Office of the Council of Co-Owners, or to such other address as the Board of Directors may hereafter designate from time to time, by notice in writing, to the Board of Directors. All notices, shall be deemed to have been given when mailed, except notices of changes of address which shall be deemed to have been given when received.

**SECTION 2.  FISCAL YEAR.**  The Board of Directors shall establish the fiscal year of the Council of Co-Owners.

**SECTION 3.  WAIVER.**  No restriction, condition, obligation or provision, contained in these By-Laws shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

**SECTION 4.  OFFICE.**  The principal office of the Council of Co-Owners shall be on the Property or at such other place as the Board of Directors may from time to time designate.

**SECTION 5.  MASTER DEED.**  The provisions of the Master Deed made by SPOLETO CONSTRUCTION & SUPPLY, INC., (of which these By-Laws are a schedule) as it may be amended or supplemented from time to time, are incorporated herein by reference, as if fully set forth herein, and shall control in the event of any conflict between those provisions and the provisions of these By-Laws.

**SECTION 6.  AMENDMENTS TO BY-LAWS.**  These By-Laws shall be amended only in accordance with the Master Deed and by vote of sixty-six and two thirds (66 2/3%) percent of the Co-Owners at any meeting of the Council of Co-Owners duly called for such purpose, following written notice to all Co-Owners and to their mortgagees appearing on the records of the Council of Co-Owners except that if such amendment directly or indirectly changes the boundaries of any Apartment, the undivided interest in the Common Elements appertaining thereto, the Limited Common Elements appertaining thereto, the liability for Common Expenses appertaining

BK S 145 PG 296

thereto, the rights to common Profits appertaining thereto,
the number of votes in the Council of Co-Owners appertaining
thereto, or the right pursuant to section 6 hereof to create
or use an opening in or to restore a partition wall or
enclose a Limited Common Element, such amendements shall
require the affirmative vote of seventy-five (75%) percent
of the Co-Owners and shall in addition require the consent
of the mortgagees of at least seventy-five (75%) percent of
the Apartments subject to mortgages and, as to opening or
restoring a partition wall or enclosing an opening of a
Limited Common Element, both as described in ARTICLE VII,
Section 5 hereof, the consent of the owners of the
Apartments directly affected.    Notwithstanding the
foregoing, no amendment which diminishes any rights reserved
to the Declarant shall be adopted without the consent of the
Declarant.  No amendment shall be of legal effect until set
forth in an amendment to the Master Deed and such amendment
is recorded in the Register of Mesne Conveyance Office for
Charleston County, South Carolina.

       SECTION 7.  CAPITAL FUND:  The Board of Directors
shall establish a working capital fund for the initial
months of the project operation equal to at least a
two-month estimated common area charge for each units owner.
Each unit owner's share of the working capital fund must be
collected and transferred to the Board of Directors at the
time of closing of the sale of each unit by the Declarant
and must be maintained in a segregated account for the use
and benefit of the Regime.  The purpose of the fund is to
insure that the Board will have cash available to meet
unforseen expenditures or necessary expenses.  Said funds
are not to be considered as advance payment of regular
assessments.

       Certified to be the By-Laws adopted on the
___6th___ day of _____May_____, 1985.


_____
                ACTING SECRETARY


-PAGE TWENTY-NINE-

BK S 1 4 5 PG 2 9 7

*Alton Ogier*

FILED, INDEXED & RECORDED

5145-236

1985 JUN -3 PM 4: 50

REGISTER MESNE CONVEYANCE
CHARLESTON COUNTY, S.C.

~~61.00~~
62.00

*not ?*
*JMD*

Recorded this 3rd day of June 19 85
On Property Record Card

*Pauline S. Koger*

Auditor Charleston County

TMS VERIFIED

BAC 7k

DTD 6-7-85

485-00-00-155 ln. 173
and lt 107